ROY F. WILLIAMS, Plaintiff v. KENNY CHARLES E. HABUL, GROUP THREE HOLDINGS, LLC, SUNENERGY 1, LLC, SUNENERGY SOLAR ROOFING, LLC, SUNENERGY1-ASHEVILLE and MONSTER SOLAR DEVELOPERS, LLC, Defendants

No. COA11-1126

(Filed 6 March 2012)

**1. Appeal and Error—interlocutory orders and appeals— dismissal in accordance with settlement**

An appeal from an order to dismiss litigation in accordance with a settlement agreement was from an interlocutory order but was heard on appeal where it determined the action and prevented a judgment from which appeal might be taken.

**WILLIAMS v. HABUL**

[219 N.C. App. 281 (2012)]

**2. Compromise and Settlement—third-party beneficiary—action for damages**

    The trial court did not err by denying a motion to enforce a settlement agreement where plaintiff sought specific performance of a promise to employ a third party. Plaintiff's argument revealed a request for damages in favor of the third-party intended beneficiary (Mr. Groninger) rather than a request for specific performance, and Mr. Groninger was the real party in interest who must bring that action.

**3. Compromise and Settlement—employment of third party—reimbursement for amounts paid**

    The trial court correctly denied plaintiff reimbursement of amounts paid to a third-party beneficiary of a settlement agreement. The language of the agreement clearly and unambiguously contemplated employment of the third party rather than an intent to pay regardless of whether he worked. Moreover, any claim for damages concerning defendants' breach of promise to pay the third party (Mr. Groninger) must be brought by Mr. Groninger.

**4. Compromise and Settlement—receipt of payment—promise to employ third party—independent covenants**

    The trial court did not err by ordering plaintiff to dismiss litigation with prejudice even though plaintiff contended that defendants had committed a prior breach of the settlement agreement by not employing a third party. Plaintiff's promise to dismiss the litigation was expressly linked to his receipt of payment from defendants; defendants' promise to employ the third party and plaintiff's promise to dismiss the litigation were independent covenants.

**5. Appeal and Error—preservation of issues—argument not raised below—not heard on appeal**

    An argument concerning breach of a settlement agreement that was not raised before the trial court was not properly before the appellate court.

    Appeal by Plaintiff from order entered 15 June 2011 by Judge Calvin E. Murphy in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 January 2012.

*Erwin, Bishop, Capitano & Moss, P.A., by J. Daniel Bishop and Amy N. Bokor, for Plaintiff-appellant.*

*Robinson, Bradshaw & Hinson, P.A., by John R. Wester, Douglas M. Jarrell, and Heyward H. Bouknight, III, for Defendant-appellees.*

HUNTER, JR., Robert N., Judge.

Roy F. Williams ("Plaintiff") appeals from the trial court's order denying Plaintiff's motion to enforce a settlement agreement he entered into with Kenny Charles E. Habul, SunEnergy 1, LLC, SunEnergy Solar Roofing, LLC, SunEnergy1-Asheville, and Monster Solar Developers, LLC (collectively "Defendants"), granting Defendants' motion to enforce the agreement, and ordering Plaintiff to dismiss with prejudice his claims against Defendants that served as the basis for execution of the agreement. After careful review, we affirm.

## I. Factual & Procedural Background

In early 2010, Plaintiff and Defendant Habul formed SunEnergy 1, LLC ("SunEnergy") to engage in the business of selling solar energy systems. Plaintiff and Mr. Habul subsequently formed SunEnergy Solar Roofing, LLC, ("SunEnergy Solar Roofing") Monster Solar, LLC, ("Monster Solar") and SunEnergy1-Asheville, LCC ("SunEnergy-Asheville") "for purposes related to the business of SunEnergy 1." Plaintiff and Mr. Habul jointly managed and each held a 50 percent ownership interest in each of the entities.

On 19 January 2011, Plaintiff filed a complaint in Mecklenburg County Superior Court against Mr. Habul and the aforementioned entities alleging, *inter alia*, that Mr. Habul made unauthorized and large distributions to himself from SunEnergy and SunEnergy Solar Roofing.[1] Plaintiff's complaint sought injunctive relief, damages, and attorney's fees for embezzlement, constructive fraud, corporate waste, fraudulent transfer, and for denying Plaintiff access to corporate records. On 21 January 2011, the matter (the "Business Court Litigation") was assigned to North Carolina Business Court Judge

---

1. Plaintiff's complaint also named Group Three Holdings, LLC ("Group Three Holdings") as a co-defendant. Mr. Habul is the sole owner and manager of Group Three Holdings, and Group Three Holdings' business is unrelated to the businesses of the other named Defendants. Plaintiff's complaint alleged, *inter alia*, that Mr. Habul withdrew money from SunEnergy and fraudulently transferred the money to Group Three Holdings.

Calvin E. Murphy. Plaintiff subsequently filed an amended complaint, further alleging usurpation of corporate opportunity and securities fraud as additional claims for relief.[2]

On 16 February 2011, Plaintiff and Mr. Habul entered into an agreement (the "Settlement Agreement") whereby Mr. Habul agreed to purchase Plaintiff's membership interests in SunEnergy, Monster Solar, and SunEnergy Solar Roofing (collectively, the "Subject Entities") for the total price of $1,018,797 (the "Payment").[3] The Settlement Agreement set forth a payment schedule whereby Mr. Habul agreed to pay Plaintiff $500,000 by 18 February 2011 and the remaining $518,797 on or before 4 April 2011. In exchange, Paragraph 5 of the Settlement Agreement provides that Plaintiff "shall dismiss [the Business Court Litigation] with prejudice" within five business days of receiving the Payment. Plaintiff further agreed, pursuant to Paragraph 9 of the Settlement Agreement, to release and discharge Defendants "from any and all causes of action, suits, claims, demands, liabilities, and obligations whatsoever in law or in equity (including derivative claims on behalf of any entity) arising at any time prior to and through the [date on which Plaintiff receives the Payment]."

Plaintiff bargained for an additional provision in the Settlement Agreement concerning Stepan Groninger, an electrician Plaintiff recruited from Florida to work for SunEnergy. As the Settlement Agreement left Plaintiff with "no further interest of any kind in the Subject Entities," Plaintiff insisted on including a provision in the Settlement Agreement to compensate Mr. Groninger. Paragraph 8 of the Settlement Agreement provides as follows:

> 8. Stepan Groninger. SunEnergy 1 shall continue to engage Stepan Groninger ("Groninger") until July 31, 2010[4] and shall pay him compensation of $5,000 per month unless terminated for "Cause," which shall mean (i) the failure of Groninger to carry out and perform the directions of his supervisor; (ii) the

2. Plaintiff joined Cornelius One, LLC and Greenbay Electronics, LLC as additional defendants in his amended complaint.

3. Mr. Habul, with Plaintiff's consent, signed the Settlement Agreement on behalf of the Subject Entities and SunEnergy—Asheville.

4. The Settlement Agreement recites 31 July 2010, not 30 July 2011, as the date through which SunEnergy was obligated to employ Mr. Groninger. The trial court, citing *State v. Beddard*, 35 N.C. App. 212, 214-15, 241 S.E.2d 83, 85 (1978), found this was a typographical error and construed the date as 31 July 2011. We agree with the trial court's construction of this provision.

**WILLIAMS v. HABUL**

[219 N.C. App. 281 (2012)]

commission of an act constituting dishonesty against SunEnergy 1; or (iii) the commission of an act involving moral turpitude that causes harm to the customer relations, operations or business prospects of SunEnergy 1 or its affiliates.

The parties also agreed as part of the Settlement Agreement to file a joint motion requesting the trial court to stay the Business Court Litigation and to approve the Settlement Agreement. Accordingly, upon joint motion of the parties, Judge Murphy entered an order on 18 February 2011 staying the Business Court Litigation and approving the Settlement Agreement.

Mr. Habul tendered $500,000 of the Payment to Plaintiff on 18 February 2011 and the remaining $518,797 to Plaintiff on 4 March 2011. Plaintiff concedes he received the Payment in full, approximately one month ahead of the payment schedule described in the Settlement Agreement. Plaintiff did not, however, dismiss the Business Court Litigation within five business days of receipt (by 11 March 2011) as required by Paragraph 5 of the Settlement Agreement. Instead, on 18 March 2011, Plaintiff filed a motion requesting the trial court to enforce the Settlement Agreement. In his motion, Plaintiff alleged that "[a]lthough the major financial terms of the Settlement Agreement have been performed ahead of schedule, Defendants have breached their obligation under paragraph 8 to employ or contract Stepan Groninger . . . at the rate of $5000 per month, through July 2011." Plaintiff stated that "[b]ut for this breach, Plaintiff is ready, willing and able to file the notice of dismissal with prejudice of [the Business Court Litigation] called for by paragraph 5 of the Settlement Agreement."

Plaintiff submitted Mr. Groninger's sworn affidavit in support of his motion to enforce the Settlement Agreement. Mr. Groninger states in his affidavit that he was "ready, willing, and able to furnish services to SunEnergy," yet he had received no communication from SunEnergy as of late February 2011. Mr. Groninger states that he "visited the jobsite that [he] was due to be working on and discovered that work had already commenced." He further states that SunEnergy manager Mike Whitson told him his services would not be needed until June and "they did not want to keep [him] from other opportunities." Mr. Groninger also describes a telephone conversation he had with Mr. Whitson, during which Mr. Whitson offered (on behalf of SunEnergy) to pay him for February if he agreed to release SunEnergy from March forward. Mr. Groninger admits that he responded, "fine, whatever;" however, Mr. Groninger states that he

told Mr. Whitson to expect his decision in writing, but he never followed through with any form of written release.

On 4 April 2011, Defendants filed a cross-motion to enforce the Settlement Agreement. Defendants offered an affidavit from Mr. Whitson in support of their motion. Mr. Whitson states in his affidavit that Mr. Groninger sent him an email on 21 February 2011 stating: " 'If you guys no longer want my help, just let me know so I can pursue other opportunities, I understand.' " Mr. Groninger's email also stated "that he had to leave North Carolina in two weeks (thus by March 7) to finish ongoing jobs he had in Florida." Mr. Whitson, describing a telephone conversation with Mr. Groninger on 24 February 2011, states as follows in his affidavit:

> Mr. Groninger stated twice in this conversation that he understood the settlement agreement between [Plaintiff] and Mr. Habul called for him to be paid for 6 months but that he did not want to force SunEnergy to employ him if the company did not need him. I emphasized that we could not engage him on a project part time with a full time salary while he completed his other business in Florida. I requested that he send me an email confirming that he was pursuing other options as of March 1 and he responded 'Yes, I can do that.' We agreed on February 24, 2011 that SunEnergy was no longer obligated to pay him after February. Mr. Groninger, however, did not send the email as he had promised.

Mr. Whitson also described an incident on 8 March 2011 when Mr. Groninger arrived at SunEnergy's offices to pick up solar panels on Plaintiff's behalf.[5] According to Mr. Whitman, he attempted to speak to Mr. Groninger, but Mr. Groninger retorted, " 'No! I've been told not to talk to you. I am now working for [Plaintiff].' "

Plaintiff reimbursed Mr. Groninger at a rate of $5,000 per month for the months of February, March, and April 2011.[6] SunEnergy reimbursed Plaintiff for the February 2011 payment but refused to reimburse Plaintiff for any subsequent payments.

In an order entered 15 June 2011, the trial court denied Plaintiff's motion to enforce the Settlement Agreement, granted Defendants'

___

5. Paragraph 2 of the Settlement Agreement permitted Plaintiff, on 24 hours' notice, to pick up his (one-half) share of the solar panels held in stock by SunEnergy.

6. Plaintiff notes, and this Court acknowledges, that these are payments made by Plaintiff to Mr. Groninger as of the filing of Plaintiff's affidavit on 3 May 2011.

motion to enforce the Settlement Agreement, and ordered Plaintiff to "file a Notice of Dismissal with Prejudice, as set forth in the Settlement Agreement, within five (5) business days of entry of this Order." With respect to Plaintiff's motion, the trial court found that Mr. "Groninger was not terminated for cause," and that he did not "positively and unambiguously waive[] his contractual right to employment through July 31, 2011." The trial court did not expressly state in its order that Defendants breached the Settlement Agreement by failing to employ Mr. Groninger; the court did find, however, that Mr. Groninger, as an intended beneficiary of the agreement, "may be able to enforce any contractual right he may have to be engaged in work with SunEnergy 1 through July 31, 2011." The trial court implicitly concluded that Plaintiff did not have a contractual right to enforce Mr. Groninger's contractual rights, if any, as the court denied Plaintiff's motion to enforce the Settlement Agreement. The trial court also denied Plaintiff's request to be reimbursed for payments he made to Mr. Groninger, stating:

> According to the plain and clear language of the agreed upon terms, SunEnergy 1 is only liable to compensate Groninger for services he furnished in work SunEnergy 1 provided him. The private intent of Plaintiff to compensate Groninger regardless of whether or not he was engaged in work is irrelevant. If the parties had contemplated paying Groninger a set sum regardless of whether he performed work for SunEnergy 1, they could have plainly and unambiguously provided for that in their agreement.

With respect to Defendant's motion to enforce the Settlement Agreement, the trial court found that "[t]he plain language of Paragraph 5 unambiguously require[d] Plaintiff to file a Notice of Dismissal with Prejudice within five business days after receiving full payment." Accordingly, because Plaintiff had received the Payment, the trial court ordered Plaintiff to dismiss the Business Court Litigation in accordance with the Settlement Agreement. Plaintiff refused to dismiss the Business Court Litigation, and, on 24 June 2011, Plaintiff filed his notice of appeal with this Court. The trial court has stayed its order requiring Plaintiff to dismiss the Business Court Litigation pending the outcome of this appeal.

## II. Jurisdiction

[1] We first note that Plaintiff's appeal is interlocutory, as the Business Court Litigation remains pending before the trial court. *See*

*Flitt v. Flitt*, 149 N.C. App. 475, 477, 561 S.E.2d 511, 513 (2002) ("An order is interlocutory if it is made during the pendency of an action and does not dispose of the case but requires further action by the trial court in order to finally determine the rights of all the parties involved in the controversy."). Generally, an interlocutory order is not immediately appealable. *See* N.C. Gen. Stat. § 1A-1, Rule 54(b) (2011). The trial court's order from which Plaintiff appeals, however, required Plaintiff to dismiss the Business Court Litigation, and, "[i]n effect determine[d] the action and prevent[ed] a judgment from which appeal might be taken." N.C. Gen. Stat. § 7A-27(d)(2) (2011); *see Dodd v. Steele*, 114 N.C. App. 632, 636, 442 S.E.2d 363, 366 (1994) ("Under North Carolina law, it is clear that a voluntary dismissal terminates a case and precludes the possibility of an appeal."). Moreover, the trial court's order had the effect of discontinuing Plaintiff's action against Defendants. *See* N.C. Gen. Stat. § 7A-27(d)(3) (2011) (an interlocutory order that "[d]iscontinues the action" is immediately appealable). Accordingly, this Court exercises jurisdiction over Plaintiff's appeal pursuant to sections 7A-27(d)(2) and/or 7A-27(d)(3) of our General Statutes.

## III. Analysis

### A. Standard of Review

This Court has determined that "a settlement agreement may be enforced by filing a new action or by filing a motion in the cause, even if 'the parties and their settlement agreement [are] still before the trial court.'" *Currituck Assocs. v. Hollowell*, 166 N.C. App. 17, 24, 601 S.E.2d 256, 261 (2004) (citation omitted) (alteration in original). "'A motion to enforce a settlement agreement is treated as a motion for summary judgment'" for purposes of appellate review. *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 695, 682 S.E.2d 726, 733 (2009) (citation omitted); *see also McKinnon v. CV Industries, Inc.*, ___ N.C. App. ___ , ___ , 713 S.E.2d 495, 500 (2011) ("Courts may enter summary judgment in contract disputes because they have the power to interpret the terms of contracts.").

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A–1, Rule 56(c) (2011). The moving party bears "the burden of demonstrating the lack of any triable issue of fact and entitlement to judgment as a matter of law." *Hardin*, 199

N.C. App. at 695, 682 S.E.2d at 733. On appeal, this Court must review the entire record, viewing the evidence in the light most favorable to the non-moving party. *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989).

## B. Plaintiff's Motion to Enforce the Settlement Agreement

### 1. Specific Performance

[2] Plaintiff contends the trial court erred in denying his motion to enforce the Settlement Agreement, as he was entitled to specific performance of Defendants' promise to employ Mr. Groninger under Paragraph 8. We disagree.

The trial court concluded Mr. Groninger was an intended beneficiary of the Settlement Agreement. Defendant does not challenge this finding, and, therefore, we treat Mr. Groninger as an intended beneficiary for purposes of this appeal. *See* N.C. R. App. P. 28(a) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."). The question presented is whether Plaintiff had the right to specifically enforce Defendants' promise to employ Mr. Groninger, the intended third party beneficiary under Paragraph 8 of the Settlement Agreement.

A settlement agreement is a contract governed by the rules of contract interpretation and enforcement. *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000) (citing *Casualty Co. v. Teer Co.*, 250 N.C. 547, 550, 109 S.E.2d 171, 173 (1959)). We recognize at the outset that the Restatement (Second) of Contracts serves as persuasive, not binding, authority upon this Court and, "[e]xcept as specifically adopted in this jurisdiction, the Restatement should not be viewed as determinative of North Carolina law." *Hedrick v. Rains*, 344 N.C. 729, 729, 477 S.E.2d 171, 172 (1996). Our Courts, however, have looked to the Restatement for guidance in cases involving third party beneficiary contracts. *See, e.g, Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 651, 407 S.E.2d 178, 181 (1991) (determining whether third party had contractual right of action). Under the Restatement approach, "A promise in a contract creates a duty in the promisor to the promisee to perform the promise even though he also has a similar duty to an intended beneficiary." Restatement (Second) of Contracts § 305(1) (1981). "The promisee of a promise for the benefit of a beneficiary has the same right to performance as any other promisee . . . ." Restatement (Second) of Contracts § 305(1) cmt. a. (1981). In the event of a breach of a promise intended to benefit a third party beneficiary to the con-

tract, "[t]he promisee cannot recover damages suffered by the beneficiary, but the promisee is a proper party to sue for specific performance if that remedy is otherwise appropriate." Restatement (Second) of Contracts § 307 cmt. b. (1981).

Here, Paragraph 8 of the Settlement Agreement represents Defendants' promise to employ Mr. Groninger through 31 July 2011 at a compensation rate of $5,000 per month. As we have already established, Mr. Groninger was the intended beneficiary of this promise. Under the Restatement view, Defendants' promise under Paragraph 8 created a duty in Defendants as promisor to both Plaintiff as promisee and to Mr. Groninger as an intended third party beneficiary. In addition, Plaintiff, as promisee, is entitled to specific performance of Defendants' promise to employ Mr. Groninger "*if that remedy is otherwise appropriate.*" *Id.* (emphasis added).

"The remedy of specific performance is an equitable remedy of ancient origin. Its sole function is to compel a party to do precisely what he ought to have done without being coerced by the court." *McLean v. Keith*, 236 N.C. 59, 71, 72 S.E.2d 44, 53 (1952). Generally, "specific performance of a contract is decreed only when it is equitable to do so." *Hutchins v. Honeycutt*, 286 N.C. 314, 318, 219 S.E.2d 254, 257 (1974). " 'The remedy of specific performance will be granted or withheld by the court according to the equities of the situation as disclosed by a just consideration of all the circumstances of the particular case . . . .' " *Byrd v. Freeman*, 252 N.C. 724, 730, 114 S.E.2d 715, 720 (1960) (citation omitted).

"For a court to award specific performance, there must be a breach of a valid contract." *McKinnon*, ___ N.C. App. at ___, 713 S.E.2d at 500. "Breach may [] occur by repudiation," where one party makes a positive statement "to the other party indicating that he will not or cannot substantially perform his contractual duties." *Millis Const. Co. v. Fairfield Sapphire Valley, Inc.*, 86 N.C. App. 506, 510, 358 S.E.2d 566, 569 (1987).

Plaintiff has paid Mr. Groninger $5,000 per month for the months of February, March, and April 2011. Plaintiff argues that Defendants repudiated their promise to employ Mr. Groninger and seeks "specific performance" of the remaining payments to Mr. Groninger for the months of May, June, and July 2011. Without reaching the issue of breach, we conclude that (1) specific performance would not be an appropriate remedy based upon the facts before this Court, and (2) even if specific performance were an appropriate remedy, we con-

strue the substance of Plaintiff's argument as a request for damages, not specific performance.

The equities in the instant case do not favor Plaintiff and undermine Plaintiff's request for the equitable remedy of specific performance. Plaintiff has received payment in excess of one million dollars from Defendants but has failed to reciprocate by dismissing the Business Court Litigation as promised. In addition, this Court recognizes the Restatement's policy against specific enforcement of personal services contracts. *See* Restatement (Second) of Contracts § 367(1) (1981) ("A promise to render personal services will not be specifically enforced."). This Court, therefore, would decline to award specific enforcement of Defendants' promise to employ Mr. Groninger if such a determination were necessary to our holding.

Plaintiff's argument, however, reveals a request for damages in favor of Mr. Groninger, not specific performance. Plaintiff fails to recognize that specific performance of Defendants' promise to employ Mr. Groninger would require not only Defendants to pay Mr. Groninger, but it would also require Mr. Groninger to work for Defendant SunEnergy. *See* Restatement (Second) of Contracts § 357 cmt. a. (1981) ("An order of specific performance is intended to produce as nearly as is practicable the same effect that the performance due under a contract would have produced."). Plaintiff does not seek this result. Plaintiff seeks an order requiring Defendants to pay $15,000 to Mr. Groninger absent the agreed upon *quid pro quo*, i.e., without requiring Mr. Groninger to provide his electrician services to SunEnergy. Plaintiff's request, in substance, asks this Court to award damages to Mr. Groninger for Defendants' alleged breach. This we cannot do. As discussed *supra*, Plaintiff cannot recover damages on behalf of Mr. Groninger, the intended beneficiary. *See* Restatement (Second) of Contracts § 307 cmt. b. (1981) ("The promisee cannot recover damages suffered by the beneficiary . . . ."). We conclude that Mr. Groninger, not Plaintiff, is the real party in interest with respect to Defendants' promise under Paragraph 8. *See Reliance Ins. Co. v. Walker*, 33 N.C. App. 15, 19, 234 S.E.2d 206, 209 (1977) ("The real party in interest is the party who by substantive law has the legal right to enforce the claim in question."). Therefore, it is Mr. Groninger, not Plaintiff, who must bring an action, if any,[7] to seek damages for Defendants' alleged breach. N.C. Gen. Stat. § 1A-1, Rule 17(a) (2011) ("Every claim shall be prosecuted in the name of the real

7. See Part III(B)(2) *infra* (discussing Mr. Groninger's potential claim and mitigation of damages).

party in interest[.]"). Accordingly, we hold the trial court correctly denied Plaintiff's motion to enforce the Settlement Agreement.

## 2. Reimbursement

[3] Plaintiff next contends he is "entitled to reimbursement of the $5,000 payments that he made to Groninger in March and April 2011." We disagree.

Questions relating to the construction and effect of a settlement agreement are resolved by employing the same rules that govern the interpretation of contracts generally. *See Penn Dixie Lines, Inc. v. Grannick*, 238 N.C. 552, 556, 78 S.E.2d 410, 414 (1953). "The court is to interpret a contract according to the intent of the parties to the contract, unless such intent is contrary to law." *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 631, 518 S.E.2d 205, 209 (1999) (citing *Duke Power v. Blue Ridge Elec. Membership Corp.*, 253 N.C. 596, 117 S.E.2d 812 (1961)). " 'If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract' ". *Id.* (quoting *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996)). "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court, and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Asheville Mall, Inc. v. F.W. Woolworth Co.*, 76 N.C. App. 130, 132, 331 S.E.2d 772, 773-74 (1985) (internal citation omitted).

Paragraph 8 provides that "SunEnergy 1 shall continue to engage" Mr. Groninger through 31 July 2011 and "shall pay him compensation of $5,000 per month" for the six months (February, March, April, May, June, and July 2011) of employment. This language clearly and unambiguously contemplates *compensation for employment*; it does not contemplate or evidence the parties' intent to pay Mr. Groninger $5,000 per month regardless of whether he worked for SunEnergy. We agree with the trial court that "[t]he private intent of Plaintiff to compensate Groninger regardless of whether or not he was engaged in work is irrelevant."

Plaintiff relies upon the Restatement (Second) of Contracts § 310(2) (1981) in support of his position. Section 310(2) of the Restatement provides that "[t]o the extent that the *claim* of an intended beneficiary is satisfied from assets of the promisee, the promisee has a right of reimbursement from the promisor, which may be enforced directly." Restatement (Second) of Contracts § 310(2) (1981) (emphasis added). The Reporter's Note to section 310

clarifies that, unlike the Restatement (First) of Contracts, this section applies to all intended beneficiaries. *See* Restatement (Second) of Contracts § 310 Reporter's Note (1981) (section not limited to creditor beneficiaries[8]).

Even if this Court were to adopt the Restatement's position on this issue, which we do not, it is impossible to determine from the evidence of record whether Mr. Groninger has a "claim" against Defendants. To conclude that Mr. Groninger has a claim against Defendants for any sum certain would ignore the question of whether and to what extent Mr. Groninger mitigated his damages incurred by Defendants' alleged breach. For example, the record indicates that Mr. Groninger was engaged in a project in Florida during the time in question. The issue of Mr. Groninger's damages and mitigation of his damages, however, is not before this Court. As discussed in part III(B)(1) supra, any claim for damages concerning Defendants' alleged breach of its promise to employ Mr. Groninger must be brought by Mr. Groninger. Accordingly, we hold that the trial court correctly denied Plaintiff's request for reimbursement.

## C. Defendants' Motion to Enforce the Settlement Agreement

[4] Plaintiff further contends the trial court erred in granting Defendants' motion to enforce the Settlement Agreement and by ordering Plaintiff to dismiss the Business Court Litigation with prejudice. Specifically, Plaintiff contends he was not obligated to dismiss because Defendants committed a prior breach of the Settlement Agreement by failing to employ Mr. Groninger.[9] Plaintiff's argument is unavailing.

"The general rule governing bilateral contracts requires that if either party to the contract commits a material breach of the contract, the other party should be excused from the obligation to perform further." *Coleman v. Shirlen*, 53 N.C. App. 573, 577-78, 281 S.E.2d 431, 434 (1981). However, "[f]ailure to perform an independent promise does not excuse nonperformance on the part of the

---

8. *See* Restatement (Second) of Contracts § 302 cmt. b. (1981) (distinguishing creditor beneficiaries from donee beneficiaries).

9. Plaintiff raised this argument in an action brought against Defendant Habul and Defendant Cornelius One, LLC in federal court. The United States District Court for the Western District of North Carolina, Judge Max O. Cogburn, Jr., presiding, dismissed Plaintiff's action with prejudice, ruling that the principles of res judicata and abstention barred Plaintiff's action, as Plaintiff's lawsuit raised issues that overlapped with the issues presented in Plaintiff's appeal before this Court. *Williams v. Habul*, No. 3:11CV374-MOC-DSC, 2011 WL 6032715, at *2-3 (W.D.N.C. Dec. 5, 2011).

other party." *Id.* at 578, 281 S.E.2d at 434. In determining whether a promise is independent or dependent, our Supreme Court has stated the following:

> "Whether covenants are dependent or independent, and whether they are concurrent on the one hand or precedent and subsequent on the other, depends entirely upon the intention of the parties shown by the entire contract as construed in the light of the circumstances of the case, the nature of the contract, the relation of the parties thereto, and other evidence which is admissible to aid the court in determining the intention of the parties."

*Harris & Harris Const. Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 117, 123 S.E.2d 590, 595 (1962) (quoting *Wade v. Lutterloh*, 196 N.C. 116, 120, 144 S.E. 694, 696 (1928)).

Our examination of the Settlement Agreement reveals that Defendants' promise to employ Mr. Groninger was a promise independent from Plaintiff's promise to dismiss the Business Court Litigation. The plain language set forth in Paragraph 5 and Paragraph 8 and juxtaposition of these two provisions supports this conclusion. Paragraph 5 provides as follows:

> 5.  <u>Dismissal of Civil Action with Prejudice.</u> Within 5 business days after [Plaintiff] receives the full Payment, [Plaintiff] shall dismiss [the Business Court Litigation] with prejudice by filing a Notice of Dismissal With Prejudice in the form attached hereto as <u>Exhibit B</u>.

Paragraph 5 expressly links Plaintiff's dismissal of the Business Court Litigation to his receipt of the Payment by stating that Plaintiff "shall dismiss" his action against Defendants within five business days of receiving the Payment in full. Plaintiff's promise to dismiss was therefore dependent upon Defendants' promise to tender the Payment. Defendants' failure to perform as promised under Paragraph 5 would have discharged Plaintiff's corresponding promise and duties under *Paragraph 5*. Paragraph 8, on the other hand, represents Defendants' promise to employ Mr. Groninger and does not reference Plaintiff's obligations under Paragraph 5. The parties opted not to include language expressly linking Plaintiff's dismissal to Defendants' employment of Mr. Groninger. There is simply no nexus between the promises recited in Paragraph 5 and those recited in Paragraph 8 to permit construction of the promises in these separate provisions as

mutually dependent. Moreover, we decline to read Defendants' promise to employ Mr. Groninger as a "constructive" condition on Plaintiff's dismissal. *See Harllee v. Harllee*, 151 N.C. App. 40, 47, 565 S.E.2d 678, 682 (2002) ("Absent clear and plain language, provisions of a contract will ordinarily not be construed as conditions precedent."). While Plaintiff is correct in asserting that "[t]he dismissal was in exchange for all of the settlement consideration," the distinction between independent and dependent promises and the effect of a breach thereof remains.

Bearing this distinction in mind, we conclude that a breach of Defendant's promise under Paragraph 8 would not have suspended or discharged Plaintiff's duty to perform under Paragraph 5. Plaintiff received the second and final installment of the Payment on 4 March 2011; thus, the only promise upon which Plaintiff's duty to dismiss depended was fulfilled, and, in accordance with the plain and unambiguous language in Paragraph 5, Plaintiff was obligated to dismiss the Business Court Litigation within five business days (by 11 March 2011). We need not reach the issue of breach, as Defendants' promise to employ Mr. Groninger and Plaintiff's promise to dismiss the Business Court Litigation were independent covenants. Whether or not Defendants breached Paragraph 8 was immaterial to Plaintiff's obligation to dismiss under Paragraph 5.[10] As discussed in part III(B)(1) *supra*, Mr. Groninger may bring a suit for Defendants' alleged breach of Paragraph 8 if he so chooses. Accordingly, we hold that the trial court did not err in ordering Plaintiff to dismiss the Business Court Litigation with prejudice.

[5] Finally, we decline to consider Plaintiff's contention that the legal effect of Defendants' alleged breach was to remit him to his original claims. Plaintiff did not raise this argument before the trial court, and, therefore, it is not properly before this Court on appeal. *See Higgins v. Simmons*, 324 N.C. 100, 103, 376 S.E.2d 449, 452 (1989)

---

10. This Court acknowledges Plaintiff's argument that Defendants failed to preserve certain issues—including whether Defendants breached the Settlement Agreement and whether Plaintiff's receipt of the Payment served as the *quid pro quo* for Plaintiff's dismissal of the Business Court Litigation—for appellate review. Plaintiff fails to recognize that the Rules of Appellate Procedure do *not* require Defendants to list these issues as proposed issues on appeal in the appellate record. *See* N.C. R. App. P. 10(c) ("An appellee's list of proposed issues on appeal shall not preclude an appellee from presenting arguments on other issues in its brief."). Defendants properly preserved these issues as alternative bases in law for supporting the trial court's order by presenting them in their appellee brief. *See id.*

("[A] contention not made in the court below may not be raised for the first time on appeal.").

For the foregoing reasons, the trial court's order is

Affirmed.

Judges STEELMAN and GEER concur.