Gao v. Sinova Specialties, Inc., 2018 NCBC 51.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

JIANXUN "BILL" GAO, individually, and derivatively on behalf of Sinova Specialties, Inc.,

        Plaintiff,

v.

SINOVA SPECIALTIES, INC., a North Carolina Corporation; JOHANNES HECKMANN; YAN "ELLEN" LIU; NEW SHORE, INC., a North Carolina Corporation,

        Defendants,

SINOVA SPECIALTIES, INC., a North Carolina Corporation,

        Nominal Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 6709

**ORDER AND OPINION ON PLAINTIFF'S MOTION TO ENFORCE MEDIATED MEMORANDUM OF UNDERSTANDING AND DEFENDANTS' MOTION TO STRIKE**

1.    **THIS MATTER** is before the Court on Plaintiff's motion to enforce mediated memorandum of understanding (the "Motion to Enforce") and Defendants' motion to strike the Affidavit of Andrew J. Enschedé (the "Motion to Strike"). For the reasons set forth below, the Court **DENIES** the motions.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jeffrey E. Oleynik, Jessica Thaller-Moran, and Ryan C. Fairchild, and Greenberg Traurig, LLP, by Gabriel Aizenberg, Andrew J. Enschedé, and Lucia Marker-Moore, for Plaintiff.*

*Erwin, Bishop, Capitano & Moss, P.A., by Joseph W. Moss, Jr., for Defendant/Nominal-Defendant Sinova Specialties, Inc.*

*Essex Richards, PA, by Marc E. Gustafson, for Defendants Johannes Heckmann and New Shore, Inc.*

*Higgins & Owens, PLLC, by Sara W. Higgins, for Defendant Yan "Ellen" Liu.*

Robinson, Judge.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

2.    Plaintiff Jianxun "Bill" Gao ("Plaintiff" or "Gao") filed his complaint on April 8, 2016, (ECF No. 1), and an amended complaint on July 8, 2016, (ECF No. 56.1).    The amended complaint asserts direct claims for judicial dissolution of Defendant/Nominal-Defendant Sinova Specialties, Inc. ("Sinova"), inspection of Sinova's corporate records, breach of fiduciary duty, constructive fraud, and unjust enrichment.[1]    (Verified Am. Compl. 37, 40, 43, 45, 47.)    The amended complaint asserts derivative claims on behalf of Sinova for breach of fiduciary duty, constructive fraud, corporate waste, unjust enrichment, and breach of contract.    (Verified Am. Compl. 41, 44, 46−48.)

3.    This action was designated as a mandatory complex business case by order of the Honorable Mark Martin, Chief Justice of the Supreme Court of North Carolina, dated April 11, 2016, (ECF No. 4), and assigned to the Honorable Louis A. Bledsoe, III by order of Chief Business Court Judge James L. Gale dated April 14, 2016, (ECF No. 5).    This case was later reassigned to the undersigned by order dated July 5, 2016. (ECF No. 54.)

---

[1] The Amended Complaint also asserts a direct claim for corporate waste, which the Court dismissed with prejudice by order and opinion dated December 21, 2016.  (ECF No. 188.)

4.    All Defendants answered the amended complaint.  (ECF Nos. 97, 195, 215, 221.)  Defendants Yan "Ellen" Liu ("Liu"), Johannes Heckmann ("Heckmann"), and Sinova each assert counterclaims against Plaintiff for breach of contract and fraud.  (Liu's Am. Countercls. 18, 20, ECF No. 268; Heckmann's Am. Countercls. 18, 20, ECF No. 267; Sinova's Second Am. Countercls. 24, 26, ECF No. 266.)   Sinova asserts additional counterclaims for breach of fiduciary duty, constructive fraud, unfair and deceptive trade practices, and unjust enrichment.  (Sinova's Second Am. Countercls. 22−23, 29−30.)

5.    The parties participated in mediation on January 10, 2018, at which Plaintiff, Liu, and Heckmann, and their respective counsel, executed a handwritten document titled "Mediated MOU" (the "MOU").  (Aff. Andrew J. Enschedé ¶ 7, Ex. 3, ECF No. 311; Aff. Sara W. Higgins ¶ 3, ECF No. 320; Aff. Joseph W. Moss, Jr. ¶ 2, ECF No. 321.)  The MOU provides as follows:

> The parties agree to negotiate in good faith to reach a definitive agreement embodying payment up to $7.3 million to Gao as follows:
> 1. $2,000,000 upon execution (guaranteed)
> 2. $500,000 in 1/19 (guarantee [sic])
> 3. Balance on non-guaranteed basis over 10 years from 2. [sic] based on Co. profit
> Gao returns shares
> Global resolution (including dismissals w [sic] prejudice of all litigation world [sic])
> Mutual covenant not to compete or impair mutual obligations
> Mutual releases

(Enschedé Aff. Ex. 3.)

6.    On January 11, 2018, the mediator, Jonathan R. Harkavy, advised the Court by e-mail, with the parties' consent, that the parties signed the MOU at

mediation. (Enschedé Aff. Ex. 4.) Mr. Harkavy's e-mail states, in part, that the parties signed the MOU "that obligates them to negotiate in good faith definitive documentation of an agreement embodying the overall financial terms to which they assented during the mediation." (Enschedé Aff. Ex. 4.) Neither Mr. Harkavy nor counsel for the parties provided the Court with a copy of the MOU at that time.

7. In light of Mr. Harkavy's e-mail, and without having reviewed the MOU, on January 12, 2018, the Court e-mailed all counsel requesting that the parties either jointly or unilaterally file a motion to stay. (Enschedé Aff. Ex. 5.)

8. On January 19, 2018, the parties filed a motion requesting a 45-day stay of all proceedings and deadlines in this action in order to permit the parties to complete their settlement negotiations and to reduce any final and binding settlement to writing. (ECF No. 303.) On January 22, 2018, the Court granted the motion and stayed all proceedings and deadlines to and including March 8, 2018. (ECF No. 304.)

9. On January 30, 2018, Gabriel Aizenberg ("Aizenberg"), counsel for Plaintiff, e-mailed a draft settlement agreement to Defendants' counsel. (Enschedé Aff. Ex. 6.) The draft spanned approximately twenty-one pages and included the terms set forth in the MOU and numerous other terms, some of which were open and required further discussion. (*See* Enschedé Aff. Ex. 6.)

10. On February 2, 2018, Sara W. Higgins ("Higgins"), counsel for Liu, responded to Aizenberg's e-mail stating, in part, "I'd like to highlight some outstanding substantive issues from the defense perspective to see if we can agree on those, before we turn to the detailed review of the language itself." (Enschedé Aff.

Ex. 7.) The issues identified by Higgins pertained to Sinova's common projects and operating budget, the individual parties' pursuit of non-common projects, clarification of all pending litigation between the parties, the non-compete provision, the profit measure on which the earn-out payments to Plaintiff were to be based, and the overall payment schedule. (Enschedé Aff. Ex. 7.) With respect to the payment schedule, Higgins stated that Defendants understood the agreed payment schedule to be $2 million upon execution of the agreement; $500,000 by January 31, 2019; and, by January 31, 2020 and each year thereafter for a total of ten years, 30% of net profit. (Enschedé Aff. Ex. 7.)

11. On February 5, 2018, Aizenberg and Andrew J. Enschedé ("Enschedé"), co-counsel for Plaintiff, discussed all pending litigation with Higgins by telephone. (Enschedé Aff. ¶ 42.)

12. On February 6, 2018, Aizenberg e-mailed Defendants' counsel copies of the lawsuits Plaintiff had filed in China and the proposed dismissal forms therefor. (Enschedé Aff. Exs. 8–9.)

13. On February 28, 2018, Joseph W. Moss, Jr. ("Moss"), counsel for Sinova, e-mailed Plaintiff's counsel a revised draft settlement agreement. (Enschedé Aff. Ex. 15.) With respect to the payment terms, Defendants' draft proposed an initial payment of $590,000 upon court approval, as opposed to $2 million. (Enschedé Aff. Ex. 15, at 7.) As to the global resolution term, Moss's e-mail explained that Defendants' draft had not removed that term, but that Defendants' proposal was to only dismiss this action, subject to resolution in future discussions of issues

underlying Liu's and Heckmann's claims in the pending actions in China. (Enschedé Aff. Ex. 15.)

14. On March 1, 2018, Aizenberg, Enschedé, and Higgins discussed Defendants' draft settlement agreement by telephone. (Enschedé Aff. ¶ 58.)

15. On March 5, 2018, Higgins e-mailed Aizenberg and Enschedé Defendants' proposal regarding the financial terms of the settlement, which again provided for an initial payment of $590,000 upon court approval, as opposed to $2 million. (Enschedé Aff. Ex. 23, at 12.) Additionally, Defendants proposed that the parties dismiss this action, but allow the actions pending in China to proceed. (Enschedé Aff. Ex. 23, at 12.)

16. From March 6 through April 3, 2018, counsel for all parties sporadically exchanged e-mails regarding Plaintiff's and Defendants' respective proposed terms. (Enschedé Aff. Ex. 23, at 1−11.) Ultimately, the parties were unable to reach agreement on a definitive document resolving all issues.

17. On April 4, 2018, Plaintiff filed the Motion to Enforce the MOU, a brief in support, and an affidavit of Enschedé and exhibits thereto ("Enschedé's Affidavit"). (ECF Nos. 309−11.)

18. On April 5, 2018, the Court denied Plaintiff's request for expedited consideration of the Motion to Enforce. (ECF No. 314.) That same day, Plaintiff filed a supplemental brief in support of the Motion to Enforce, to which Defendants did not object. (ECF No. 315.)

19.     On April 27, 2018, Defendants filed the Motion to Strike Enschedé's Affidavit and a brief in support, (ECF Nos. 317–18), a response brief in opposition to the Motion to Enforce, (ECF No. 319), and affidavits of Higgins and Moss, (ECF Nos. 320–21).

20.     The motions have been fully briefed.  As permitted by Rule 7.4 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"), the Court decides the motions without a hearing.[2]

## II.     MOTION TO STRIKE

21.     As discussed more fully below, the summary judgment standard of review applies to a motion to enforce a settlement agreement.  *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 694–95, 682 S.E.2d 726, 732–33 (2009).  Pursuant to Rule 56(e) of the North Carolina Rules of Civil Procedure, affidavits supporting or opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  N.C. Gen. Stat. § 1A-1, Rule 56(e).  If an affidavit contains hearsay or facts that would be inadmissible in evidence,

---

[2] The Court notes that, in Plaintiff's brief in support of the Motion to Enforce, Plaintiff requests that the Court conduct an evidentiary hearing and ask Mr. Harkavy to testify at the hearing.  (Pl.'s Br. Supp. Mot. Enforce 15.)  Pursuant to BCR 7.12, "[u]nless the Court orders otherwise, a hearing on a motion . . . will not involve live testimony.  A party who desires to present live testimony must file a motion for permission to present that testimony."  Plaintiff did not file a motion in compliance with BCR 7.12.  Plaintiff's request to present live testimony at an evidentiary hearing is denied.

the offending portions of the affidavit should be stricken. *Strickland v. Doe*, 156 N.C. App. 292, 295, 577 S.E.2d 124, 128 (2003).

22. Defendants move to strike Enschedé's Affidavit on numerous grounds. The Court addresses each in turn.

### A.     N.C. Gen. Stat. § 7A-38.1 and Rule 408

23. Defendants argue that portions of Enschedé's Affidavit pertaining to the parties' settlement communications before, during, and after mediation are inadmissible under N.C. Gen. Stat. § 7A-38.1 and Rule 408 of the North Carolina Rules of Evidence ("Rule(s)"). (Defs.' Mem. Supp. Mot. Strike 2−4.) As to section 7A-38.1, Plaintiff argues that this statute does not apply because the mediation at which the parties executed the MOU was not a court-ordered mediation. (Pl.'s Resp. to Defs.' Mot. Strike 3−4, ECF No. 328.)

24. Even assuming *arguendo* that section 7A-38.1 applies, the Court concludes that it does not bar admission of evidence of the parties' settlement communications before, during, or after mediation in this proceeding on Plaintiff's Motion to Enforce. Section 7A-38.1(l) expressly provides that

> [e]vidence of statements made and conduct occurring in a mediated settlement conference or other settlement proceeding conducted under this section . . . shall be inadmissible in any proceeding in the action . . . *except*:
>
>  . . . .
>
> (2) *In proceedings to enforce or rescind a settlement of the action*[.]

N.C. Gen. Stat. § 7A-38.1(l) (emphasis added).

25. As Enschedé's Affidavit was introduced in support of Plaintiff's Motion to Enforce, section 7A-38.1 does not bar its admission.[3]

26. Under Rule 408, evidence of conduct or statements made in compromise negotiations "is not admissible to prove liability for or invalidity of the claim or its amount." N.C. Gen. Stat. § 8C-1, Rule 408. Rule 408 does not, however, prohibit evidence of conduct or statements made in compromise negotiations if offered for some other purpose. *Breedlove v. Aerotrim, U.S.A., Inc.*, 142 N.C. App. 447, 453−54, 543 S.E.2d 213, 217−18 (2001).

27. Enschedé's Affidavit was not offered to prove the validity or invalidity of any of the claims in this action; rather, it was offered to prove that the parties entered into the MOU and that Defendants breached the terms thereof by failing to negotiate in good faith. Therefore, Rule 408 does not bar admission of Enschedé's Affidavit.

B. **Parol Evidence Rule**

28. Defendants argue that paragraphs 2 through 23 of Enschedé's Affidavit are inadmissible under the parol evidence rule. (Defs.' Mem. Supp. Mot. Strike 4−5.) More specifically, Defendants argue that the statements in Enschedé's Affidavit that characterize certain terms as "agreed to" or "resolved" contradict the terms of the

---

[3] The Court acknowledges Defendants' argument that the MOU is not a settlement agreement and, therefore, this is not a "proceeding[] to enforce . . . a settlement of the action." Despite Plaintiff's concession, and the Court's conclusion, that the MOU is not a settlement agreement, which the Court discusses in its analysis of the Motion to Enforce, Plaintiff seeks enforcement of the MOU as if it were a settlement agreement. Further, the parties have treated Plaintiff's motion as a motion to enforce a settlement agreement. Therefore, under the unique circumstances of this case, the Court concludes Plaintiff's motion is a proceeding to enforce a settlement within the meaning of section 7A-38.1(l)(2).

MOU. (Defs.' Reply Br. Supp. Mot. Strike 6–7, ECF No. 329.) Plaintiff argues that the statements in paragraphs 2 through 23 provide evidence of the context surrounding the MOU and, thus, are not barred by the parol evidence rule because they do not vary, add to, or contradict the MOU. (Pl.'s Resp. to Defs.' Mot. Strike 5.)

29. "The parole evidence rule prohibits the admission of parol evidence to vary, add to, or contradict a written instrument intended to be the final integration of the transaction." *Lassiter v. Bank of N.C.*, 146 N.C. App. 264, 269, 551 S.E.2d 920, 923 (2001). Parol evidence is admissible, however, to explain or interpret an ambiguous term. *Drake v. Hance*, 195 N.C. App. 588, 591, 673 S.E.2d 411, 413 (2009). The parol evidence rule only applies where the writing contains the complete agreement of the parties. *Emp't Staffing Grp., Inc. v. Little*, 243 N.C. App. 266, 271, 777 S.E.2d 309, 313 (2015).

30. Even assuming *arguendo* that the parol evidence rule applies, the Court concludes that the challenged paragraphs of Enschedé's Affidavit offer context surrounding the parties' negotiations of, and agreement to, the MOU, rather than varying, adding to, or contradicting the MOU's terms. Therefore, the Court concludes that the parol evidence rule does not prohibit the admission of paragraphs 2 through 23 of Enschedé's Affidavit.

### C. Rules 402 and 403

31. Defendants argue that almost all of the statements in Enschedé's Affidavit are irrelevant or designed to prejudice Defendants and, accordingly, are inadmissible under Rules 402 and 403. (Defs.' Mem. Supp. Mot. Strike 5–6.)

32. Relevant evidence is generally admissible. N.C. Gen. Stat. § 8C-1, Rule 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* § 8C-1, Rule 401. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* § 8C-1, Rule 403. Whether to exclude relevant evidence under Rule 403 is within the trial court's sound discretion. *State v. Braxton*, 352 N.C. 158, 186, 531 S.E.2d 428, 444 (2000).

33. The Court concludes, based on its review, that Enschedé's Affidavit is relevant to support Plaintiff's contentions that the parties entered into the MOU and that Defendants breached the terms thereof. The Court further concludes, in its discretion, that Enschedé's Affidavit should not be excluded under Rule 403.

### D. Rules 602 and 802

34. Defendants' Motion to Strike states Rules 602 and 802 as additional bases for the motion. (Defs.' Mot. Strike 1.) Defendants do not, however, further mention or explain these grounds in their briefs in support of the motion, and the Court finds them to be unavailing.

35. Therefore, Defendants' Motion to Strike Enschedé's Affidavit is denied.

## III.   MOTION TO ENFORCE

### A.   Legal Standard

36.   "[A] party has two options in deciding how to specifically enforce the terms of the settlement agreement."  *Hardin*, 199 N.C. App. at 708, 682 S.E.2d at 741 (quotation marks omitted).  A party may "(1) take a voluntary dismissal of his original action and then institute a new action on the contract, or (2) seek to enforce the settlement agreement by petition or motion in the *original* action."  *Estate of Barber v. Guilford Cty. Sheriff's Dep't*, 161 N.C. App. 658, 662, 589 S.E.2d 433, 436 (2003); *DeCristoforo v. Givens*, 2015 NCBC LEXIS 56, at *19 (N.C. Super. Ct. May 29, 2015). When a party seeks to enforce the settlement agreement by motion in the original action, the motion is treated as a motion for summary judgment.  *Hardin*, 199 N.C. App. at 694–95, 682 S.E.2d at 732–33.

37.   "Summary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'any party is entitled to a judgment as a matter of law.'" *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)).  "A 'genuine issue' is one that can be maintained by substantial evidence."  *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).  The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008).  The Court must view the evidence in the light most favorable to the nonmovant.  *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835.

**B.**     **Analysis**

38.     The Motion to Enforce presents a novel issue for the Court due to the fact that Plaintiff acknowledges that the MOU is *not* a binding settlement agreement, but rather is an agreement to *negotiate* in good faith a settlement agreement.  (*See, e.g.*, Pl.'s Br. Supp. Mot. Enforce 3, 15−16, 24; Suppl. Br. Supp. Pl.'s Mot. Enforce 1, ECF No. 315; Defs.' Mem. Opp'n Pl.'s Mot. Enforce 2, 12; Pl.'s Reply Mem. Supp. Mot. Enforce 1, 3, ECF No. 327.)  Indeed, Plaintiff states in his brief that "Plaintiff does not and has never contended that the MOU represents a binding settlement agreement.  Rather, Plaintiff's only contention with respect to the MOU is that it represents a binding agreement to negotiate in good faith based on the terms of the MOU[.]"  (Suppl. Br. Supp. Pl.'s Mot. Enforce 1.)  Plaintiff contends, and Defendants dispute, that Defendants breached the MOU by insisting on terms that substantially deviated from the payment and global resolution terms set forth in the MOU.  (Pl.'s Br. Supp. Mot. Enforce 16, 20−22; Defs.' Mem. Opp'n Pl.'s Mot. Enforce 15−19.)

39.     Relying in part on *Recurrent Energy Dev. Holdings, LLC v. SunEnergy1, LLC*, 2017 NCBC LEXIS 18 (N.C. Super. Ct. Mar. 7, 2017) and *New Friendship Used Clothing Collection, LLC v. Katz*, 2017 NCBC LEXIS 72 (N.C. Super. Ct. Aug. 18, 2017), Plaintiff argues that express agreements to negotiate in good faith are enforceable and asks the Court to

> hold that: (a) the MOU is an enforceable agreement to negotiate in good faith; (b) the MOU obligates the parties to negotiate toward a settlement agreement with terms substantially similar to or not inconsistent with the MOU's terms; and (c) Defendants' failure to substantially adhere to the MOU's terms violated their obligation to negotiate in good faith.

(Pl.'s Br. Supp. Mot. Enforce 15, 20, 24.)  Plaintiff further requests that the Court "order Defendants to negotiate in good faith to reach a settlement agreement with terms substantially similar [sic] or not inconsistent with the MOU's terms." (Pl.'s Br. Supp. Mot. Enforce 24.)

40.     The Court agrees with the analyses set forth in *Recurrent* and *New Friendship* that an express agreement to negotiate in good faith may be enforceable. *See Recurrent Energy Dev. Holdings, LLC*, 2017 NCBC LEXIS 18, at *44–47; *New Friendship Used Clothing Collection, LLC*, 2017 NCBC LEXIS 72, at *40–42.  The enforceability of such agreements, however, is not the primary issue with which the Court is confronted.

41.     It is well settled that a party may seek to enforce a *settlement agreement* by filing a motion in the original action.  *E.g.*, *Williams v. Habul*, 219 N.C. App. 281, 288, 724 S.E.2d 104, 109 (2012).  The foremost issue before the Court, then, is whether the MOU constitutes a settlement agreement.

42.     Plaintiff concedes throughout his briefs that the MOU is not a settlement agreement.  (*See, e.g.*, Pl.'s Br. Supp. Mot. Enforce 3, 15–16, 24; Suppl. Br. Supp. Pl.'s Mot. Enforce 1; Pl.'s Reply Mem. Supp. Mot. Enforce 1, 3.)  The Court agrees.  The MOU constitutes only an agreement to *negotiate* a settlement agreement in good faith.  *See Black's Law Dictionary* (10th ed. 2014) (defining a "settlement agreement" as "[a]n agreement ending a dispute or lawsuit").  That the MOU is not a settlement agreement is made clearer when one considers the parties' obligations thereunder. As the cases Plaintiff cites and on which Plaintiff relies explain, the MOU does not

obligate the parties to reach a final settlement agreement—Plaintiff and Defendants could fully comply with their respective obligations to negotiate in good faith but fail to reach a final settlement agreement. *See Howard Town Ctr. Developer, LLC v. Howard Univ.*, 278 F. Supp. 3d 333, 385 (D.D.C. 2017) (noting that "parties may in good faith disagree on open terms of the contract being negotiated, and, as a result, decide mutually to abandon the negotiation"); *Stanford Hotels Corp. v. Potomac Creek Assocs., L.P.*, 18 A.3d 725, 736 (D.C. 2011) (noting that the obligation to negotiate in good faith "does not guarantee that the final contract will be concluded if both parties comport with their obligation, as good faith differences in the negotiation of the open issues may prevent a reaching of final contract"); *SIGA Techs., Inc. v. Pharmathene, Inc.*, 67 A.3d 330, 345 (Del. 2013) (same); *see also Recurrent Energy Dev. Holdings, LLC*, 2017 NCBC LEXIS 18, at *45 (discussing *RREF BB Acquisitions, LLC v. MAS Props., L.L.C.*, 2015 NCBC LEXIS 61 (N.C. Super. Ct. June 9, 2015) and its explanation that an agreement to negotiate in good faith does not "bind the parties to consummate a final agreement").

43. The Court understands Plaintiff's frustration with the current posture of the case, especially where it appears, based on the record before the Court, that Plaintiff left the mediation thinking he had set a course toward mutually agreeable resolution of this litigation. Unfortunately for Plaintiff, the document signed by the parties in attendance did not serve that purpose.

44. Additionally, and while not a basis for the Court's determination of the Motion to Enforce, the Court notes that Plaintiff seeks equitable relief in the form of

an order compelling Defendants to "negotiate in good faith." Under the facts of this case, the Court does not believe that such relief is available to Plaintiff. *See Curran v. Barefoot*, 183 N.C. App. 331, 338, 645 S.E.2d 187, 192 (2007) ("Specific performance will not be decreed unless the terms of the contract are so definite and certain that the acts to be performed can be ascertained and the court can determine whether or not the performance rendered is in accord with the contractual duty assumed."); *see also Great-West Inv'rs LP v. Thomas H. Lee Partners, L.P.*, C.A. No. 5508-VCN, 2011 Del. Ch. LEXIS 6, at *32−33 (Del. Ch. Jan. 14, 2011) ("[A]n agreement to negotiate in good faith may be binding under Delaware law, however, and specific performance could, in theory, be an appropriate remedy for breach of such a provision. In practice, the problems with ordering parties to negotiate in good faith are significant. Indeed, courts of equity could not be expected to enter such orders except where any violation of the order (*i.e.*, any bad faith negotiation) would be easily detected. And, ordinarily, such detection would not be easy unless the substantive deal was substantially agreed to." (quotation marks omitted)); *Stanford Hotels Corp.*, 18 A.3d at 737 (concluding that the trial court had the authority to specifically enforce an agreement to negotiate in good faith but explaining that if "the parties had not yet come to agreement on the terms of sale and drafted a Definitive Agreement ready for execution, the specific performance [Plaintiff] seeks might not be available as a remedy. . . . [C]ourts will not lightly undertake responsibility for overseeing compliance following the award of specific performance, as would have been required here if the parties had not already reached agreement on the terms of, and drafted,

the Definitive Agreement"). While Plaintiff may now have a separate cause of action for breach by Defendants of the agreement to negotiate in good faith, that claim is not raised in this litigation.

45. Therefore, because the Court concludes, based on the record before it and applying the summary judgment standard, that the parties did not reach a settlement agreement, the Motion to Enforce is denied.

## IV. CONCLUSION

46. For the foregoing reasons, Defendants' Motion to Strike and Plaintiff's Motion to Enforce are **DENIED**.

**SO ORDERED**, this the 29th day of May, 2018.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases