GILES BYRD AND WIFE, ELOISE W. BYRD v. LLOYD FREEMAN AND WIFE, VIOLA FREEMAN; J. K. YOUNG AND WIFE, LETCY YOUNG; AND W. J. BAREFOOT AND WIFE, FRANCES W. BAREFOOT.

(Filed 10 June, 1960.)

**1. Vendor and Purchaser § 23—**

A contract whereby the owner of land grants to another for a valuable consideration the right to purchase the land within a specified time upon stated terms and conditions, is irrevocable, and upon acceptance in accordance with its terms gives rise to a contract specifically enforceable.

**2. Appeal and Error § 35—**

Where the charge of the court is not in the record, it will be presumed that the jury was instructed correctly on every principle of law applicable to the facts.

**3. Vendor and Purchaser § 23— Evidence held to disclose acceptance by purchasers in accordance with terms of option contract.**

The purchasers' evidence to the effect that prior to the execution of the option contract the parties went upon the land and pointed out the physical boundaries of that part of the tract which was to be excepted from the conveyance, that the option agreement provided for the conveyance of the tract, except ten acres more or less, that the purchasers' surveyor made a map of the portion to be excepted, containing 9.2 acres, in accordance with the boundaries thus pointed out, that the vendors contended that this map was not in accordance with the physical boundaries as pointed out, but that a correct survey thereof would show a tract of 11.5 acres, and that prior to the expiration of the option the purchasers tendered the balance of the agreed purchase price and agreed to accept deed excepting the 11.5 acres from the conveyance, is held sufficient to be submitted to the jury in the purchasers' action for specific performance on the propositions as to whether the 9.2 acre tract was in accordance with the physical boundaries agreed upon by the parties, and, if not, whether the purchasers agreed to accept deed excepting from the conveyance 11.5 acres in accordance with the vendors' contentions.

**4. Same— Purchasers waiving agreement for division of agricultural allotments inserted in contract for their benefit may enforce specific performance.**

The option agreement in suit provided for the sale of a part of a tract of land with provision for division of cotton and tobacco allotments in specified amounts as a material part of the consideration for the agreement. *Held:* In the purchasers' action for specific performance, vendors are not entitled to nonsuit on the ground that the division of the crop allotments was precluded by regulations under the Agricultural Adjustment Act when the evidence discloses that the provisions relating thereto were inserted at the instance and for the benefit of the purchasers, that the purchasers rather than the vendors were adversely affected in that the regulations precluded the transfer to them

of the entire tobacco allotment agreed upon while giving the vendors a higher tobacco allotment and a smaller cotton allotment, and that the purchasers agreed to accept deed in accordance with the agricultural regulations, the value of the additional tobacco allotment gained by vendors being much greater than the value of the cotton allotment lost to them under the regulations.

**5. Same—**
The right to specific performance must be determined by the court in accordance with the equities arising upon consideration of all the facts and circumstances of each particular case.

APPEAL by defendants from *McKinnon, J.,* September-October Term, 1959, of COLUMBUS.

Civil action to enforce specific performance of a contract (option) dated September 26, 1958, and recorded in Book 216, page 115, in the office of the Register of Deeds of Columbus County, North Carolina, in which defendants Freeman, for the consideration and upon the conditions stated, agreed to convey certain described lands (68 acres, more or less) in Waccamaw Township except the dwelling house of defendants Freeman and "ten acres, more or less, on which same is located," to be "run off by a surveyor and properly identified by courses and distances." The record does not show when the contract was filed for registration.

The contract provided that, if the option granted to plaintiffs was exercised on or before 12:00 o'clock noon on October 11, 1958, by the (additional) payment of $7,400.00 ($100.00 having been paid when the contract was executed), defendants Freeman would then convey the lands to plaintiffs in fee simple, free and clear of encumbrances, by warranty deed.

The contract contains this provision: "It is further understood and agreed that, if this option is exercised, the parties hereto will execute such instruments as may be necessary to transfer and assure to parties of the second part (plaintiffs) three acres of the present tobacco allotment, and to the parties of the first part (defendants Freeman) one tenth of an acre of the present tobacco allotment, one acre of the peanut alloment, 1.7 acres of the cotton allotment, and all corn allotment; it being understood that the division of said allotments set forth is a material part of the consideration for this transaction and that such leases or other instruments as may be necessary to effect said intention will be executed."

Uncontradicted evidence is to the effect that plaintiffs, on October 11, 1958, and in apt time, tendered the (additional) $7,400.00, and that defendants Freeman refused to accept such tender and execute a deed as demanded by plaintiffs.

Thereafter, all or part of the land described in the contract was purportedly conveyed by deed dated October 22, 1958, and recorded in Book 212, page 341, said Registry, from defendants Freeman to defendants Young. This deed was filed for registration on October 23, 1958.

This action was instituted against defendants Freeman and Young on December 19, 1958; and, simultaneously with the commencement of this action, a notice of *lis pendens* in the usual and proper form was filed and spread upon the records in the office of the Clerk of Superior Court of Columbus County. Subsequently, defendants Barefoot were made parties.

All of the land described in the contract, except a tract of 11.5 acres referred to in the opinion, was purportedly conveyed by a deed dated December 18, 1958, and recorded in Book 216, page 440, said Registry, from defendants Young to defendants Barefoot. This deed was filed for registration on December 22, 1958.

Plaintiffs, in substance, alleged: They had fully complied with the contract. The purported deed from defendants Freeman to defendants Young was void as to plaintiffs for that it was made by defendants Freeman without consideration, for the fraudulent purpose of breaching their contract with plaintiffs, and defendants Young acquired no beneficial interest in the lands described therein. In addition to specific performance, they were entitled to recover for loss of rents and profits for the period subsequent to October 11, 1958.

A joint answer was filed by defendants Freeman and Young. A separate answer was filed by defendants Barefoot.

In addition to general denials, all defendants, in substance, alleged that plaintiffs were not entitled to specific performance or other relief for two reasons: (1) Prior to the execution of the contract of September 26, 1958, Giles Byrd and Lloyd Freeman marked off and agreed upon the boundaries of the tract to be excepted from the conveyance, namely, a tract of 11.5 acres, but plaintiffs refused to accept the deed and pay the purchase price if the deed were so drawn. (2) The provisions with reference to crop allotments were in violation of the regulations of the Agricultural Stabilization "Corporation" and "impossible of performance."

Evidence was offered by plaintiffs and by defendants.

The court submitted, and the jury answered, these issues: 1. Did the plaintiff Byrd sufficiently comply with the terms of the Option Agreement? ANSWER: Yes. 2. Was the deed from Lloyd Freeman and wife to J. K. Young and wife executed without consideration for

the fraudulent purpose of breaching an agreement with the plaintiffs Byrd? ANSWER: Yes. 3. What amount if any, is *(sic)* the plaintiffs entitled to recover from the defendants Barefoot for loss of rents and profits? ANSWER: $600.00."

From a judgment for plaintiffs, decreeing specific performance and for the recovery from defendants Barefoot of $600.00 as rents and profits for the use of the lands for the year 1959, and taxing defendants with the costs, defendants excepted and appealed.

*Powell, Lee & Lee for plaintiffs, appellees.*
*Proctor & Proctor and Powell & Powell for defendants, appellants.*

BOBBITT, J. Defendants present one question: Did the court err in refusing to grant the motion for judgment of nonsuit made by defendants at the close of all the evidence?

All grounds asserted by defendants in support of their contention that their said motion for judgment of nonsuit should have been granted relate solely to matters involved in the first issue. Hence, discussion of evidence relevant only to the second and third issues is unnecessary.

"A contract, whereby one party, for a valuable consideration, grants to another an option on terms, conditions, and for a time, specified, to call for the doing of a certain act, constitutes an irrevocable offer which, on acceptance in accordance with its terms, gives rise to a contract that may be specifically enforced." 81 C.J.S., Specific Performance § 47; 49 Am. Jur., Specific Performance § 117; Williston on Contracts, Revised Edition, Vol. 5, § 1441; *Timber Co. v. Wilson,* 151 N.C. 154, 65 S.E. 932; *Samonds v. Cloninger,* 189 N.C. 610, 127 S.E. 706; *Trust Co. v. Frazelle,* 226 N.C. 724, 40 S.E. 2d 367.

Uncontradicted evidence tends to show these facts: On the morning of September 26, 1958, Giles Byrd and Lloyd Freeman went upon the Freeman lands and identified the physical boundaries of the tract of ten acres, more or less, to be retained by the Freemans. The lines of this tract were to be surveyed in order to get the calls for a description by course and distance. Thereafter, the contract of September 26, 1958, was drafted by R. H. Burns, Jr., an attorney, and executed by defendants Freeman in Burns' office.

After execution of the contract, Bland, a registered surveyor, made a map of the tract to be retained by the Freemans in accordance with the physical boundaries *as pointed out to him by Byrd.* The tract shown on the Bland map contains 9.2 acres.

Prior to and on October 11, 1958, Freeman contended the Bland

map was not in accord with the physical boundaries upon which he and Byrd had agreed; that the tract to be retained by the Freemans, if surveyed according to the agreed physical boundaries, contained 11.5 acres; and that the tract of 11.5 acres is shown on a map made by Schnibben, registered surveyor.

The difference between the two tracts is that the Schnibben map shows a triangular area south of the south line of the 9.2 acre tract shown on the Bland map. (Note: The evidence tends to show this triangular area of 2.3 acres was "woodsland" and was not relevant in determining the division of the crop allotments.)

The charge of the trial court was not included in the record on appeal. Hence, it is presumed that the jury was instructed correctly on every principle of law applicable to the facts. *Hatcher v. Clayton,* 242 N.C. 450, 88 S.E. 2d 104.

A provision in the judgment indicates the jury found the 9.2-acre tract shown on the Bland map was in accordance with the physical boundaries upon which Byrd and Freeman had agreed. Moreover, there was evidence to the effect that, on the occasion of their tender on October 11, 1958, plaintiffs agreed to accept "the deed for the same lands that were later deeded to Barefoot," that is, a deed providing that the tract of 11.5 acres shown on the Schnibben map was excepted from the conveyance.

On this phase of the case, there was ample evidence for submission to the jury in connection with the first issue on these propositions: (1) Was the 9.2-acre tract surveyed in accordance with the physical boundaries agreed upon by plaintiffs and defendants Freeman prior to the execution of the contract of September 26, 1958? (2) If not, did plaintiffs, on the occasion of their tender, agree to accept a deed excepting from the conveyance the 11.5 acres shown on the Schnibben map? It appears that the jury resolved one or both of these questions against defendants.

As to crop allotments, uncontradicted evidence tends to show: Under regulations issued by the Secretary of Agriculture pursuant to the Agricultural Adjustment Act of 1938, as amended, U.S.C.A., Title 7, § 1281 *et seq.,* referred to hereafter as the ASS (Agricultural Stabilization Service) regulations, the division of crop allotments is made on the basis of *cleared* land. The Freeman lands included a total of nineteen acres of cleared land. The lands to be conveyed by defendants Freeman to plaintiffs included thirteen acres of cleared land and the land to be retained by defendants Freeman included six acres of cleared land. Each farm, after division, would have an allotment of one acre for peanuts. There were no corn allotments after 1958. The entire

tobacco allotment was 3.1 acres and the entire cotton allotment was 1.7 acres. Upon division, the thirteen acres would have a tobacco allotment of 2.12 acres and a cotton allotment of 1.2 acres and the six acres would have a tobacco allotment of .98 acre and a cotton allotment of .5 acre. Thus, under ASS regulations, plaintiffs would acquire a tobacco allotment of 2.12 acres instead of 3 acres and a cotton allotment of 1.2 acres instead of .0 acre. Conversely, defendants Freeman would retain a tobacco allotment of .98 acre instead of .1 acre and a cotton allotment of .5 acre instead of 1.7 acres.

Defendants contend the contract provisions as to crop allotments are in conflict with ASS regulations and therefore "impossible of performance." On the other hand, plaintiffs contend it does not appear that leases or other legal instruments sufficient to perform the contract provisions and at the same time comply with ASS regulations could not have been drafted. Suffice to say, we accept, for present purposes, defendants' contention.

There was evidence tending to show that Byrd "wanted as much tobacco as (he) could get"; that in order to acquire a tobacco allotment of 3 acres he was willing for defendants Freeman to have the benefit of any and all allotments in respect of other crops; and that the provisions as to leases or other instruments were included in the contract to make effective this feature of the agreement.

When plaintiffs made their tender and demanded the deed on October 11, 1958, defendants Freeman refused to execute a lease. Freeman testified that, although he and Byrd had agreed upon a division of crop allotments as set forth in the contract, there had been no discussion of lease provisions and he did not know provisions relating thereto were in the contract until after he had signed it. Mrs. Freeman testified: "Mr. Byrd mentioned about a lease and he said he could get that tobacco if we leased it to him and I told him and my husband told him we would not lease it to him. We told him we wouldn't make any leases. We wanted our land in the clear. We wanted no ties on him, him no ties on us."

There was evidence that plaintiffs and defendants Freeman, prior to October 11, 1958, had been advised as to the division of crop allotments under ASS regulations. When Freeman refused to execute a lease, Byrd testified that he (Byrd) agreed to take the land "without a lease," notwithstanding he would receive a tobacco allotment of 2.12 acres instead of 3 acres, but defendants Freeman still refused to comply with plaintiffs' demand for a deed.

This question is presented: May defendants now avoid the obliga-. tions of defendants Freeman under their contract with plaintiffs sole-

ly on the ground that, under ASS regulations, their cotton allotment was smaller and their tobacco allotment was larger than contemplated by their agreement with plaintiffs?

Defendants Freeman did not at any time attribute their refusal to make a deed to plaintiffs to the fact that they would have less cotton allotment under ASS regulations. On this phase of the case, the asserted ground of their refusal was their unwillingness to execute a lease (relating to the tobacco allotment) which would or might complicate their title to the retained acreage. Moreover, there is no evidence that defendants Freeman were adversely affected by said differences in the cotton and tobacco allotments. It is common knowledge that the value of the additional tobacco allotment of .88 acre to be gained by defendants Freeman under ASS regulations was greater than the value of the cotton allotment of 1.2 acres to be lost. Indeed, this was frankly stated by counsel for defendants on oral argument.

"The remedy of specific performance will be granted or withheld by the court according to the equities of the situation as disclosed by a just consideration of all the circumstances of the particular case, and no positive rule can be laid down by which the action of the court can be determined in all cases." 49 Am. Jur., Specific Performance § 8; 81 C.J.S., Specific Performance § 3.

The contract of September 26, 1958, in its basic provisions, provided for the conveyance of described land for an agreed consideration. The provisions as to crop allotments were declared to be "a material part of the consideration" for the transaction. It was discovered that, in the event of such conveyance, ASS regulations rather than the contract provisions would control the division of crop allotments. If performance were possible, these contract provisions would be advantageous to plaintiffs. Under these circumstances, it would be inequitable to deny to plaintiffs the remedy of specific performance on the unsubstantial ground that contractual provisions advantageous to plaintiffs rather than to defendants Freeman were "impossible of performance."

There was evidence tending to support a jury finding that the provisions of the contract of September 26, 1958, relating to crop allotments were inserted therein at the instance and for the benefit of plaintiffs; that plaintiffs, rather than defendants Freeman, were adversely affected by the fact that these contractual provisions could not be performed; and that plaintiffs waived such provisions and offered to accept a deed under which the division of crop allotments would be as provided in ASS regulations. It must be assumed that the jury so found. Under these conditions, defendants Freeman had

no legal right to refuse compliance with their contract to convey the lands simply because the contract provisions and ASS regulations were in conflict in respect of crop allotments to the extent stated above.

It is noteworthy that, under agreement by plaintiffs, the decree of specific performance excepts the tract of 11.5 acres shown on the Schnibben map rather than the 9.2 acres shown on the Bland map.

After full consideration, we are of opinion, and so hold, that the evidence was sufficient for submission to the jury under appropriate instructions.

No error.