IN THE SUPREME COURT OF NORTH CAROLINA

No. 373A14

11 June 2015

CAPE FEAR RIVER WATCH, SIERRA CLUB, WATERKEEPER ALLIANCE, and MOUNTAINTRUE (f/k/a WESTERN NORTH CAROLINA ALLIANCE),

Petitioners

v.

NORTH CAROLINA  ENVIRONMENTAL MANAGEMENT COMMISSION,

Respondent,

and

DUKE ENERGY CAROLINAS, LLC and DUKE ENERGY PROGRESS, INC.,

Respondent-Intervenors

Appeal pursuant to N.C.G.S. §§ 7A-27(b)(1) and 150B-52 from an order on petition for judicial review entered on 6 March 2014 by Judge Paul C. Ridgeway in Superior Court, Wake County.  On 10 October 2014, pursuant to N.C.G.S. § 7A-31(a) and (b)(2) and Rule 15(e)(2) of the North Carolina Rules of Appellate Procedure, the Supreme Court on its own initiative certified the case for review prior to determination in the Court of Appeals.  Heard in the Supreme Court on 16 March 2015.

> *Southern Environmental Law Center, by Austin D. Gerken Jr., Amelia Y. Burnette, J. Patrick Hunter, and Frank Holleman, for petitioner-appellees.*
>
> *Roy Cooper, Attorney General, by Mary L. Lucasse and Jennie Wilhelm Hauser, Special Deputy Attorneys General, for respondent-appellant.*
>
> *Womble Carlyle Sandridge & Rice, LLP, by James P. Cooney III; and Hunton & Williams LLP, by Charles D. Case, Matthew F. Hanchey, Frank E. Emory, Jr., and Brent A. Rosser, for respondent-intervenor-appellants.*

ERVIN, Justice.

The substantive issue before us in this case is whether the trial court erred by reversing a portion of a declaratory ruling issued by the North Carolina Environmental Management Commission (Commission) on 18 December 2012 relating to the application of the Commission's groundwater protection rules codified at Title 15A, Subchapter 2L, "Groundwater Classification and Standards," of the North Carolina Administrative Code, to coal ash lagoons. *See* 15A NCAC 2L .0101-.0417 (June 2014) [hereinafter Groundwater Rules]. In view of our conclusion that the General Assembly's enactment of Chapter 122 of the 2014 North Carolina Session Laws[1] supersedes the rule at issue in this appeal with respect to coal ash lagoons located at facilities with active permits, *see* Act of Aug. 20, 2014, ch. 122, 2014 5 N.C. Adv. Legis. Serv. 77 (LexisNexis) [hereinafter Chapter 122], we vacate the trial court's order and remand this case to the trial court with instructions to dismiss petitioners' appeal from the Commission's declaratory ruling on mootness grounds.

The present case stems from a dispute over the manner in which certain regulatory requirements should be applied to coal ash lagoons that received operating

---

[1] The parties have referred to Chapter 122, in its entirety, as the "Coal Ash Management Act." However, the Coal Ash Management Act of 2014 (codified at N.C.G.S. §§ 130A-309.200 to -309.231) is a component of Chapter 122, which also amends a number of pre-existing statutory provisions.

permits before 30 December 1983.[2] At the time at which the present proceeding was commenced, unlined coal ash lagoons existed at fourteen coal-fired electric generating facilities located in North Carolina. These coal ash lagoons contained the residue from the combustion of coal used to generate electricity. These residual materials consisted of a mixture of water, coal combustion by-products, and other waste.[3] All fourteen of the power generation facilities at issue in this case operate subject to National Pollutant Discharge Elimination System ("NPDES") permits that were originally issued by the North Carolina Department of Environment and Natural Resources ("DENR") and are subject to Groundwater Rules that have been adopted by the Commission. According to groundwater samples taken from monitoring wells located on the properties on which the coal ash lagoons are located, levels of contamination that exceed the relevant groundwater standards have been reported near some lagoons associated with the coal-fired generating facilities at issue in this proceeding.

Section .0106 of Title 15A, Subchapter 2L of the North Carolina Administrative Code describes the corrective actions required when "groundwater quality has been degraded." 15A NCAC 2L .0106 [hereinafter Rule .0106]. According to Rule .0106(c),

---

[2] According to the regulations at issue in this proceeding, facilities with coal ash lagoons that were permitted prior to 30 December 1983 are "deemed not permitted." 15A NCAC 2L .0106(e)(4)

[3] The waste by-products found in the coal ash lagoons at issue in this case include arsenic, thallium, boron, sulfate, nickel, iron, chromium, manganese, and selenium, all of which are subject to groundwater concentration standards.

which applies to sites that are either unpermitted or "deemed not permitted" pursuant to Rule .0106(e)(4) at which groundwater contamination exceeds authorized levels:

> Any person conducting or controlling an activity which has not been permitted by the Division and which results in an increase in the concentration of a substance in excess of the standard, other than agricultural operations, shall:
>
> (1) immediately notify the Division of the activity that has resulted in the increase and the contaminant concentration levels;
>
> (2) take immediate action to eliminate the source or sources of contamination;
>
> (3) submit a report to the Director assessing the cause, significance and extent of the violation; and
>
> (4) implement an approved corrective action plan for restoration of groundwater quality in accordance with a schedule established by the Director or his designee. In establishing a schedule the Director, or his designee shall consider any reasonable schedule proposed by the person submitting the plan.

*Id.* .0106(c). On 10 October 2012, Cape Fear River Watch, Sierra Club, Waterkeeper Alliance, and Western North Carolina Alliance filed a request that the Commission issue a declaratory ruling clarifying the application of the Groundwater Rules to coal ash lagoons. More specifically, petitioners requested the Commission to make the following rulings:

> a) Operators of coal ash lagoons with NPDES permits first issued on or before December 30, 1983, must take corrective action pursuant to 15A N.C. Admin.

Code 2L .0106(c) when their activity results in an increase in the concentration of a substance in excess of groundwater quality standards, whether or not groundwater quality standards have been exceeded at or beyond a compliance boundary around the lagoon;

b)      Operators of coal ash lagoons with NPDES permits first issued on or before December 30, 1983, must take immediate action to eliminate sources of contamination that cause a concentration of a substance in excess of groundwater quality standards, in advance of their separate obligation to propose and implement a corrective action plan for the restoration of groundwater quality contaminated by those sources; and

c)      Operators of closed and inactive coal ash lagoons must implement corrective action as unpermitted activities pursuant to 15A N.C. Admin. Code 2L .0106(c) when they cause an increase in the concentration of a substance in excess of groundwater quality standards.

After the filing of this request for a declaratory ruling and a decision by petitioners and DENR to enter into certain stipulations relating to relevant facts, the Commission granted an intervention petition filed by Duke Energy Carolinas, LLC and Carolina Power & Light Company, an indirect subsidiary of Duke Energy Corporation, d/b/a Progress Energy Carolinas ("Duke"). After reviewing the record and hearing oral argument from counsel for the parties at a 3 December 2012 meeting, the Commission issued a declaratory ruling on 18 December 2012, concluding, in pertinent part, that:

16.    Activities that do not meet the requirements of 2L .0106(e), including those permitted prior to December 30, 1983, are deemed unpermitted and are subject to the requirements of 2L .0106(c) applicable to persons conducting or controlling an activity (other than agricultural operations) that has not been permitted and which results in an increase in the concentration of a substance in excess of the standard.

17.    The corrective action requirements in 2L .0106(c)(1) through (4) are not prioritized, and the immediate action to eliminate the source or sources of contamination requires responsible parties and the Division to follow the detailed procedures set forth in the entirety of the 2L Groundwater Rules.

18.    The specific corrective actions enumerated in 15A NCAC 2L .0106(f)(1) through (4) that are required to be undertaken, including a site assessment and a corrective action plan for the abatement, containment or control of migration of any contaminants, require a reasonable amount of time to accomplish. The "immediate action" contemplated by 15A NCAC 2L .0106(c)(2) is action appropriate to the circumstances evaluated in the context of the 2L Groundwater Rules.

On 8 January 2013, petitioners filed a petition seeking judicial review of the Commission's declaratory ruling in Superior Court, Wake County, in which they claimed that the Commission had misconstrued the applicable regulations and erroneously failed to construe the applicable regulations in the manner contended for by petitioners in their original request for declaratory relief. After the submission of legal memoranda from the parties, the trial court heard oral argument on 26 August 2013 concerning the issues raised by petitioners' request for a declaratory ruling. On the same day, Duke submitted a supplemental brief informing the trial court about

the enactment of Chapter 413 of the North Carolina Session Laws three days earlier. *See* Act of July 26, 2013, ch. 413, Sec. 46, 2013 N.C. Sess. Laws 1752, 1783-84 [hereinafter Chapter 413].[4]  According to Duke, the enactment of Chapter 413 rendered moot the first of the three rulings that petitioners sought to have the trial court make.  In response, petitioners submitted a supplemental brief in which they acknowledged that the first ruling that they had requested the Commission to make had been rendered moot by the enactment of Chapter 413.

On 6 March 2014, the trial court entered an order determining that portions of the Commission's decision were "plainly erroneous and inconsistent with the regulation."  More specifically, the trial court found that the first request contained in petitioner's original request for a declaratory ruling had, as the parties agreed, been rendered moot by the enactment of Chapter 413;[5] reversed the Commission's decision with respect to petitioners' second request for a declaratory ruling and concluded that, in the event of a violation of the applicable groundwater rules by an unpermitted entity, "immediate action" must be taken to "eliminate sources" of the contamination that caused the violation; and dismissed petitioners' claim with respect to the third request for declaratory relief set out in their original petition

---

[4] This legislation was signed by the Governor on 23 August 2013 and took effect on that date.

[5] As a result, the appropriateness of utilizing a compliance boundary in the course of determining whether a violation of the groundwater standards has occurred is no longer in dispute between the parties.

relating to unpermitted coal ash disposal sites on the grounds that petitioners had, in fact, prevailed on that issue before the Commission given that the Commission's "[r]uling concurs with [petitioners'] interpretation." The Commission and Duke noted an appeal to the Court of Appeals from that portion of the trial court's order relating to the second ruling requested in petitioners' petition for a declaratory ruling. On 10 October 2014, this Court on its own motion certified this case for immediate review prior to determination of this case by the Court of Appeals.[6]

---

[6] Duke and petitioners both filed motions seeking to have this Court take judicial notice of various items of information. In its motion, Duke requested us to judicially notice certain statements made by members of the General Assembly during a 3 July 2014 session of the House of Representatives and certain news reports relating to the 2014 coal ash legislation. In their motions, petitioners asked us to judicially notice certain public records demonstrating the manner in which 15A NCAC 2L .0106(c) had been interpreted in the past and materials relating to a DENR decision imposing approximately $25 million in civil penalties and a "Proposed Groundwater Assessment Work Plan" relating to alleged groundwater violations at Duke's L.V. Sutton generating facility. In light of our determination that the issue before us at this time is moot, we conclude that the same is true of the first of petitioners' requests for judicial notice, which we also dismiss as moot. In view of the fact that "[t]estimony, even by members of the Legislature which adopted the statute, as to its purpose and the construction intended to be given by the Legislature to its terms, is not competent evidence upon which the court can make its determination as to the meaning of the statutory provision," *State ex rel. N.C. Milk Comm'n v. Nat'l Food Stores, Inc.*, 270 N.C. 323, 332-33, 154 S.E.2d 548, 555 (1967) (citations omitted), Duke's request for judicial notice is denied. Finally, petitioners' second motion for judicial notice, which, according to petitioners, tends to show that DENR does not consider the Groundwater Rules upon which their request for a declaratory ruling is predicated to have been superseded by the enactment of the Coal Ash Management Act, while arguably relevant to the mootness issue that forms the basis for our decision, involves documents relating to a specific enforcement action stemming from an alleged groundwater violation at a specific electric generating facility. In view of the complexity of the issues that would be raised by consideration of this filing, the fact that additional litigation may well result from the enforcement action that is reflected in the documents in question, and the fact that the parties have not had a chance to fully brief any issues that would arise from a consideration of these documents, we conclude that petitioners' second request for judicial notice should be denied as well.

On 20 August 2014, the General Assembly ratified Chapter 122, which became effective on 20 September 2014 after the Governor failed to either sign or veto it. Act of Aug. 20, 2014, ch. 122, 2014 5 N.C. Adv. Legis. Serv. 77 (LexisNexis).

> "[W]henever during the course of litigation it develops that . . . the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain an action merely to determine abstract propositions of law. If the issues before the court become moot at any time during the course of the proceedings, the usual response is to dismiss the action."

*Messer v. Town of Chapel Hill*, 346 N.C. 259, 260, 485 S.E.2d 269, 270 (1997) (per curiam) (ellipsis in original) (citations omitted). According to the Commission and Duke, the enactment of this legislation rendered the declaratory ruling that is before us in this case moot on the grounds that provisions of the legislation in question superseded Rule .0106(c) with respect to the manner in which groundwater violations occurring at facilities subject to active NPDES permits should be addressed. We agree.

As rewritten by the General Assembly effective 20 September 2014, N.C.G.S. § 143-215.1(k), which addresses the proper response to a situation in which groundwater standard violations occur beyond a facility's compliance boundary, provides that:

> (k) Where the operation of a disposal system permitted under this section results in exceedances of the groundwater quality standards at or beyond the compliance *boundary, the Commission shall require the permittee to undertake corrective action, without regard to*

> *the date that the system was first permitted, to restore the groundwater quality by assessing the cause, significance, and extent of the violation of standards and submit the results of the investigation and a plan and proposed schedule for corrective action to the Director or the Director's designee . . . . In establishing a schedule the Director or the Director's designee shall consider any reasonable schedule proposed by the permittee.*

N.C.G.S. § 143-215.1(k) (2014), *as amended by* ch. 122, Sec. 12(a), 2014 5 N.C. Adv. Legis. Serv. at 123 (added language in italics). Although petitioners agree that the rewritten version of N.C.G.S. § 143-215.1(k) eliminates the distinction between facilities that were permitted before 30 December 1983 and facilities that were permitted after that date by providing that all permitted facilities, "without regard to the date that the system was first permitted," are subject to the corrective action requirements of Rule .0106(d), petitioners contend that the enactment of the revised version of N.C.G.S. § 143-215.1(k) does not have the effect of mooting the trial court's ruling with respect to the second issue posed in their original petition for declaratory relief given that the new statutory language does not alter the regulatory requirements applicable to disposal sites that do not hold active permits issued pursuant to N.C.G.S. § 143-215.1.[7] We do not find petitioners' contention persuasive.

---

[7] In their brief, petitioners also argue that the provisions of Chapter 122 do not eliminate the applicability of the groundwater standards given that the former operates as a minimum set of requirements that DENR is free to supplement with more stringent regulations. However, petitioners did not press this argument at oral argument and we do not find it persuasive given the detailed instructions set out in the relevant provisions of Chapter 122 for addressing remediation-related issues.

Any consideration of the validity of petitioners' response to the mootness contention advanced by the Commission and Duke must begin with an understanding that the only issue before us at this time is the correctness of the trial court's ruling with respect to the second issue set out in petitioners' original request for a declaratory ruling. In that portion of their filing, petitioners requested the Commission to determine that "[o]perators of coal ash lagoons *with NPDES permits* first issued on or before December 30, 1983, must take immediate action to eliminate sources of contamination that cause a concentration of a substance in excess of groundwater quality standards." (Emphasis added.) As a review of its plain language clearly indicates, the second request for a declaratory ruling set out in petitioners' petition related solely to facilities holding an NPDES permit. By contrast, the third request for a declaratory ruling set out in petitioners' petition applied to "[o]perators of closed and inactive coal ash lagoons." Although petitioners correctly assert that the second request set out in their petition for a declaratory ruling is only moot as applied to facilities with *active* permits, their second request for a declaratory ruling was limited to facilities with such permits. As a result, the only issue that, in petitioners' view, remains viable following the enactment of the current version of N.C.G.S. § 143-215.1(k) is not properly before the Court.

Assuming, without deciding, that the second requested ruling set out in petitioners' request for a declaratory ruling could apply to facilities that lack active permits, we believe that the issue that is currently before us is moot for an entirely

different reason. The trial court's unchallenged findings of fact establish that "[t]here is no evidence of record of any closed or inactive coal ash lagoons." "A trial court's unchallenged findings of fact are presumed to be supported by competent evidence and [are] binding on appeal." *Mussa v. Palmer-Mussa*, 366 N.C. 185, 191, 731 S.E.2d 404, 409 (2012) (alteration in original) (citation and internal quotation marks omitted). As this finding suggests, a careful examination of the uncontradicted evidence contained in the record that has been presented for our review in this case tends to show that all facilities at which coal ash lagoons were located did, in fact, hold an active NPDES permit.[8] As a result, the evidence before us in this case reinforces our conclusion that this case has been rendered moot as a matter of both law and fact by virtue of the enactment of the revised version of N.C.G.S. § 143-215.1(k).

Finally, petitioners contend that we should review the correctness of the trial court's resolution of the issue posited by the second request for a declaratory ruling set out in their original petition given that this issue involves a question of extraordinary public interest. "In state courts the exclusion of moot questions from determination is not based on a lack of jurisdiction but rather represents a form of judicial restraint." *In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978)

---

[8] A list of permitted facilities, complete with the NPDES permit number applicable to each facility and the date upon which the original permit applicable to that facility had been issued, was submitted to the Commission and stipulated to by petitioners as being accurate.

(citations omitted), *cert. denied*, 442 U.S. 929, 99 S. Ct. 2859, 61 L. Ed. 2d 297 (1979). "Even if moot . . . this Court may, if it chooses, consider a question that involves a matter of public interest, is of general importance and deserves prompt resolution." *N.C. State Bar v. Randolph*, 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989) (per curiam) (citations omitted). While the appropriate response to the environmental issues associated with the operation of coal ash lagoons is clearly a matter of significant public interest, this Court's role in the resolution of such questions is limited to determining the content of existing law and ensuring that existing law is appropriately applied to the relevant facts. At this point, the record does not contain any indication that any decision that we might make with respect to the correctness of the trial court's resolution of the second request for a declaratory ruling set out in petitioners' petition would have any practical impact. In addition, it is clear that the General Assembly has taken an active role in the proper resolution of the issues that petitioners sought to have addressed in the petition for a declaratory ruling. By adopting Chapter 122, the General Assembly sought to address the public's understandable concern about the effect of the operation of coal ash lagoons on the ground and surface waters in North Carolina. In light of these considerations, we believe that we should refrain from issuing what amounts to an advisory opinion concerning any impact of the applicable regulation on any non-permitted coal ash lagoons that may, contrary to the record evidence, actually exist. As a result, we hereby vacate the trial court's order and remand this case to the trial court with

instructions to dismiss petitioners' appeal from the Commission's declaratory ruling on mootness grounds.[9]

VACATED AND REMANDED.

Justice EDMUNDS did not participate in the consideration or decision of this case.

---

[9] In view of our determination that this proceeding has been rendered moot by the enactment of N.C.G.S. § 143-215.1(k) (2014), we need not address the jurisdictional and substantive challenges that have been advanced in opposition to the trial court's order on judicial review.