IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-168

Filed 4 March 2026

Wake County, No. 23CV013439-910

SADYE PAEZ, Plaintiff,

v.

WILLIAM PETTIS, Defendant.

Appeal by defendant from order entered 19 September 2024 by Judge John W. Smith in Wake County Superior Court. Heard in the Court of Appeals 19 November 2025.

*Q Byrd Law, by Quintin D. Byrd, for plaintiff-appellee.*

*Parry Law, PLLC, by Edward Eldred and Jonah A. Garson, for defendant-appellant.*

WOOD, Judge.

William Pettis ("Defendant") appeals the trial court's order granting specific performance entered on 19 September 2024. The trial court entered this order following a jury verdict finding: a contract existed between Sadye Paez ("Plaintiff") and Defendant; Defendant breached the contract; Plaintiff suffered actual compensatory damages in the amount of $19,000.00; and Plaintiff owns an interest in Four Paez LLC ("Four Paez"), PPKS LLC ("PPKS"), and The Raleigh Kitchen Space LLC ("RKS"). Defendant makes two arguments. First, Defendant argues the trial

court abused its discretion by entering its order for specific performance. Second, Defendant argues the trial court's judgment cannot be upheld because it overruled a prior order and necessary parties had been released from the action and no longer subject to the trial court's jurisdiction. After careful review of the record and applicable law, we affirm the trial court's judgment and order granting specific performance.

## I. Factual and Procedural Background

Plaintiff and Defendant met and began dating in 2017 while Plaintiff was living and working in Durham. Plaintiff and Defendant ended their dating relationship after Plaintiff moved to New York. The parties reconnected in 2021 and resumed "an on again, off again" long distance relationship until approximately January 2023. During this time, they talked about their future together and discussed Plaintiff moving back to North Carolina. Additionally, they began a professional relationship by forming three limited liability companies to purchase property and to start a commercial kitchen space business together. Plaintiff never moved back to North Carolina.

Four Paez was formed first to purchase the property located at 3805 South Wilmington Street in Raleigh and renovate it into a multi-vendor commercial kitchen space. The Four Paez operating agreement indicates Plaintiff, Defendant, James Stilson ("James"), and Katherine Stilson ("Katherine") are each members and have equal ownership interests. James and Katherine are Defendant's godparents and

- 2 -

joined this business venture as guarantors to help Plaintiff and Defendant secure funding to purchase the property.

RKS was formed next to rent the property from Four Paez and run the business by leasing the individual commercial kitchen spaces out to tenants. The RKS operating agreement states Defendant and James are the only members, with Defendant owning an 80% interest and James owning the remaining 20%. PPKS was created last as a holding company for Defendant's 80% ownership interest in RKS. The PPKS operating agreement names Defendant and James as managers, while naming Defendant and Plaintiff as members. The PPKS operating agreement takes Defendant's 80% ownership interest in RKS and divides it equally among Plaintiff and Defendant. The operating agreement for PPKS states the initial ownership interests of its members are as follows:

| Member | Ownership Interest |
|---|---|
| [Defendant] | 40% |
| [Plaintiff] | 40% |
| TOTAL: | 80% (the [RKS]) |

Throughout the loan application process to purchase 3805 South Wilmington Street, Plaintiff alleged Defendant had represented to her that she would be a 40% owner of RKS but that Defendant emailed the lender stating he would own 80% of

RKS and James would own the other 20%.[1]  Defendant assured Plaintiff via text message that his assertion in the email was just for the loan paperwork and she would be an owner of RKS.  Plaintiff alleged each party was to contribute $50,000.00 as an initial investment toward the down payment to purchase and renovate 3805 South Wilmington Street; however, Plaintiff, in addition to her share, also contributed $10,000.00 towards Defendant's expected initial contribution.

On 23 November 2022, Four Paez officially purchased the 3805 South Wilmington Street property.  In an undated text message from Defendant to Plaintiff, Defendant stated "[i]m gonna wire you 25 k plus 10 k next week. [James] moved the money."  Plaintiff purports this text message to be from December 2022.  Plaintiff testified that after closing on the property, James made the decision to reimburse part of her initial investment with a personal loan he took out.  Plaintiff claims she was initially wired $25,000.00 and then later was sent an additional $10,000.00 upon her request.  However, "as things continued to sour" after Plaintiff and Defendant's personal relationship ended, James asked for the money to be returned to him.  Plaintiff did not return the money.  As time went on Plaintiff claims Defendant was not communicating with her, making her role managing the social media and

---

[1] In September 2022, Defendant sent an email to the lender reflecting he would own 70% of RKS and James would own the other 30%.  At trial, Defendant testified he and James originally agreed to a 70/30 ownership split, but later changed the ownership to reflect that Defendant would own 80% and James would own the other 20%.  Regardless, Defendant represented to the lender that he and James were the only owners of RKS.

marketing for RKS difficult. Plaintiff claims that Defendant also blocked her access to the bank accounts associated with the businesses.

On 26 May 2023, Plaintiff filed a complaint against Defendant, James, and Katherine. The complaint asserted four causes of action: (1) breach of contract, (2) fraud, (3) misrepresentation, and (4) civil conspiracy, in addition to a claim for attorney fees. Further, the complaint requested specific performance of the contract terms Plaintiff alleged existed and were enforceable. On the same day, Plaintiff filed a motion for a preliminary injunction and temporary restraining order specifically requesting: (1) Defendant, James, and Katherine return the remaining funds from her initial investment to the original account or provide to her information for the new account into which the funds in question had been transferred; (2) the status quo of Plaintiff's ownership interest in PPKS, RKS, and Four Paez be maintained; (3) no bank accounts, passwords, or other pertinent information relating to RKS be changed; and (4) no monies or property from RKS be transferred. On 3 July 2023, Defendant, James, and Katherine filed a combined answer asserting that the operating agreements for the businesses at issue bar Plaintiff's claims. Further, Defendant, James, and Katherine asserted that all of Plaintiff's causes of action except for breach of contract should be dismissed pursuant to Rule 12(b)(6). The trial court entered an order denying Plaintiff's motion for a preliminary injunction and temporary restraining order on 22 November 2023.

On 20 December 2023, Plaintiff filed a second motion for a preliminary injunction and temporary restraining order asking the trial court to order Defendant, James, and Katherine to: (1) return her remaining initial investment funds to the original account or provide to her information for the new account into which the funds in question had been transferred; (2) maintain the status quo for Four Paez; (3) prohibit other members from voting to remove Plaintiff while the action was pending; and (4) provide Plaintiff access to all financial and business information regarding Four Paez. On 8 February 2024, the trial court ordered Defendant, James, and Katherine to provide Plaintiff with financial information regarding Four Paez and to continue duties and tasks for the Four Paez business as usual. The trial court further ordered Plaintiff to return the $35,000.00 James previously sent as reimbursement for her initial investment in the property.

On 30 May 2024, James and Katherine filed a motion for summary judgment pursuant to Rule 56 on the grounds that there were no genuine issues of material fact. The motion asserted:

> James and Katherine Stilson, and [Defendant], contend that all of the evidence and Plaintiff's admissions and action establish that (i) [Plaintiff] owns 25% of Four Paez, LLC, (ii) James Stilson owns 25% of Four Paez, LLC, (iii) Katherine Stilson owns 25% of Four Paez, LLC, (iv) [Defendant] owns 25% of Four Paez, LLC, (v) [Plaintiff] owes 25% of the costs for the build out and monthly expenses, and (vi) [James] Stilson and [Defendant] are the only two owners of The Raleigh Kitchen Space, LLC.

Plaintiff objected to the motion for summary judgment asserting there were genuine

issues of material fact. The trial court conducted a hearing on the motion for summary judgment on 8 July 2024; Defendant was not present nor represented at the hearing.[2] On 15 July 2024, the trial court entered its order granting the motion for summary judgment without making written findings of fact or conclusions of law.

Plaintiff's remaining claims against Defendant went to trial on 9 September 2024. Plaintiff and Defendant were the only witnesses to testify; text messages, emails, and business documents were admitted as evidence. Following the close of evidence, Defendant made a motion to dismiss Plaintiff's claims. The trial court dismissed all claims except breach of contract.

On 13 September 2024, the jury returned the following verdicts and special verdicts: (1) Yes, to whether Plaintiff and Defendant entered into a contract; (2) Yes, to whether Defendant breached the contract; (3) $19,000.00 as the amount Plaintiff is entitled to recover from Defendant for the breach of contract; (4a) Plaintiff and Defendant each have a 40% ownership interest in RKS; (4b) Plaintiff and Defendant each have a 25% ownership interest in Four Paez; (4c) Plaintiff and Defendant each have a 50% ownership interest in PPKS.[3]

---

[2] A transcript for this hearing was not included in the record on appeal.

[3] Questions (1), (2), and (3) are general verdicts "by which the jury pronounces generally upon all or any of the issues, either in favor of the plaintiff or defendant." N.C. Gen. Stat. § 1A-1, Rule 49(a). Questions (4a), (4b), and (4c) are special verdicts. "A special verdict is that by which the jury finds the facts only." *Id.*

The hearing for entry of final judgment could not be completed within the same session, so the trial court ordered the matter to be "recessed and continued day to day, session to session" until 19 September 2024. On 19 September 2024, James and Katherine appeared and were represented by counsel. The trial court indicated it had advised the parties to come to a resolution on their own, but they had reached impasse. The trial court heard arguments from each party on how they believed the final order should be entered. The trial court made its determination and then allowed the parties to interrupt, ask questions, and point out any errors as it read its order for specific performance. The trial court entered final judgment upon the jury verdict and entered an order for specific performance. On 8 October 2024, Defendant filed notice of appeal.

## II. Analysis

Defendant asserts two issues on appeal. First, Defendant argues the trial court abused its discretion by entering its order for specific performance. Second, Defendant argues the trial court's judgment cannot be upheld because it effectively overrules a prior order of another superior court judge and because necessary parties had been released from the action and not subject to the trial court's jurisdiction. We disagree.

## A. Specific Performance

Defendant argues the trial court abused its discretion by granting specific performance because its conclusion that "no remedy other than specific performance

will provide to plaintiff the full benefits of the contract" is unsupported because Plaintiff "made no attempt" to prove the impossibility or difficulty in valuing an ownership interest in RKS. Defendant further argues even if Plaintiff had proven inadequacy or difficulty in valuing an ownership interest in RKS, the trial court's decree "goes far beyond any reasonable construction of any agreement" because the terms of the contract are not clear and the terms of the contract the trial court "appears" to have found are unsupported by the evidence presented. Additionally, despite the jury's verdict finding the existence of a contract between Plaintiff and Defendant, Defendant argues a valid contract did not exist because there was no consideration from Plaintiff.

First, we note that while Defendant attempts to contest the jury's verdicts, whether there is error regarding the jury's verdicts is not an issue before us on appeal. Defendant has appealed only the issues of whether the trial court has abused its discretion in ordering specific performance in the manner that it did, whether the trial court overruled the prior summary judgment order dismissing the claims against James and Katherine, and whether James and Katherine were necessary parties and should have been parties the entirety of the trial. Defendant has not appealed the trial court's denial of his motion to dismiss the claim for breach of contract. Further, Defendant has not appealed the trial court's denial of his motion for a directed verdict nor his motion for a judgment notwithstanding the verdict. Thus, the jury's verdicts finding the existence of a valid contract between Plaintiff

and Defendant and that Defendant breached that contract stand and we shall not address this issue on the merits.

"The remedy of specific performance rests in the sound discretion of the trial court and is conclusive on appeal absent a showing of a palpable abuse of discretion." *Diener v. Brown*, 290 N.C. App. 273, 277, 892 S.E.2d 212, 215 (2023) (cleaned up). "A judge is subject to reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason." *Kassel v. Rienth*, 289 N.C. App. 173, 184, 888 S.E.2d 682, 693 (2023) (quoting *Greenshields, Inc. v. Travelers Prop. Cas. Co. of Am.*, 245 N.C. App. 25, 31, 781 S.E.2d 840, 844 (2016)). When reviewing a trial court's findings of fact, we are limited to determining whether the findings of fact are supported by competent evidence and then whether those findings of fact support the conclusions of law. *Kassel*, 289 N.C. App. at 184, 888 S.E.2d at 693. "A trial court's unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." *Cherry Cmty. Org. v. Sellars*, 381 N.C. 239, 246, 871 S.E.2d 706, 714 (2022) (quoting *Cape Fear River Watch v. N.C. Env't Mgmt. Comm'n*, 368 N.C. 92, 99, 772 S.E.2d 445, 451 (2015)). Conclusions of law are reviewed *de novo* on appeal. *Curran v. Barefoot*, 183 N.C. App. 331, 335, 645 S.E.2d 187, 190 (2007).

Our Supreme Court has stated:

> The remedy of specific performance is available to compel a party to do precisely what he ought to have done without being coerced by the court. The party claiming the right to

> specific performance must show the existence of a valid
> contract, its terms, and either full performance on his part
> *or that he is ready, willing and able to perform.*

*Id.* (quoting *Munchak Corp. v. Caldwell*, 301 N.C. 689, 694, 273 S.E.2d 281, 285 (1981)). "The remedy of specific performance will be granted or withheld by the court according to the equities of the situation as disclosed by a just consideration of all the circumstances of the particular case." *Williams v. Habul*, 219 N.C. App. 281, 290, 724 S.E.2d 104, 110 (2012) (cleaned up) (quoting *Byrd v. Freeman*, 252 N.C. 724, 730, 114 S.E.2d 715, 720 (1960)).

Prior to the trial court's entry of its order for specific performance, the jury returned general verdicts finding Plaintiff and Defendant entered into a contract and Defendant breached the contract regarding Plaintiff's ownership interest in RKS and PPKS. Further, the jury returned special verdicts finding Plaintiff and Defendant each have a 40% ownership interest in RKS and Plaintiff and Defendant each have a 50% ownership interest in PPKS.

While Defendant is correct Plaintiff did not make explicit arguments at trial regarding the inadequacy of monetary damages in lieu of specific performance, the record is clear the trial court considered the inadequacy of other remedies before concluding that "no other remedy other than specific performance will provide to plaintiff the full benefits of the contract between parties." The trial court's consideration of this is clear when reading the entirety of the paragraph from which the challenged conclusion is taken:

12. Plaintiff is entitled to have and secure her benefits of the contract as found by the jury and the exercise of the court's discretionary powers to assure the specific performance by the defendant of the terms of the contract is necessary and appropriate. The court specifically concludes that *no remedy other than specific performance will provide to plaintiff the full benefits of the contract between parties.* The major asset of the contract is a building in South Raleigh purchased for $1.2 million now worth over $4 million due to improvements made by plaintiff and defendant jointly; but the court finds that third parties hold a mortgage on that building together with an innocent third party membership interests in the LLC holding title and from which mortgage payments are made. Because third parties have a membership interest in the operating agreements of the relevant LLC organized as a part of the contract between the plaintiff and defendant, the court has limited authority to affect the fundamental structure of the companies themselves without prejudicing the rights of the third parties, which the court should not do even assuming the court had the jurisdiction to do so, which is questionable. However, the defendant has the ability to fully comply with the promises and material terms of his contract with the plaintiff, and he should be required to do so.

It is clear from the record the trial court considered the unique complexities of this case, such as the real property involved and substantial investment that has gone into it, third parties involved, structure of the businesses, and necessity of an award that would not disrupt the third parties' interests in the businesses. "The remedy of specific performance will be granted or withheld by the court according to the equities of the situation as disclosed by a just consideration of all the circumstances of the particular case." *Williams*, 219 N.C. App. at 290, 724 S.E.2d at 110 (cleaned up) (quoting *Byrd*, 252 N.C. at 730, 114 S.E.2d at 720). Thus, the trial court's conclusion

that "no remedy other than specific performance will provide to plaintiff the full benefits of the contract between parties" is adequately supported by its findings when considering the circumstances of the particular case and difficulties of other remedies. The trial court did not abuse its discretion ordering specific performance for this reason.

Next, we consider Defendant's argument regarding the terms of the contract enforced by the order for specific performance. Specifically, Defendant takes issue with the trial court's adjudication that Plaintiff "be the immediate owner of 40% of the beneficial economic interest in" RKS because there was no evidence Defendant agreed to give Plaintiff a beneficial ownership interest. The trial court supported its adjudication of Plaintiff as a beneficial economic interest owner by concluding Plaintiff is an economic interest holder under N.C. Gen. Stat. § 57D-1-03(11), which is defined as, "[a] person who owns an economic interest but is not a member." N.C. Gen. Stat. § 57D-1-03(11) (2024). This conclusion is supported by the trial court's finding:

> 7. Although defendant owns 80% of [RKS] according to the operating agreement, the jury has determined that plaintiff is entitled to half of defendant's interest under the contract that defendant breached. Defendant's godfather James Stilson currently owns a 20% interest in [RKS] and was not a party to the agreement between plaintiff and defendant; and therefore, the court has no jurisdiction over [James'] interest and rights in [RKS].

At trial, Plaintiff provided operating agreements showing members and ownership interests for each LLC and text message and email correspondence from Defendant explaining his intent behind the division of ownership interests and creation of each LLC. Specifically, the operating agreement for PPKS states the initial ownership interests of its members are as follows:

| Member | Ownership Interest |
|--------|--------------------|
| [Defendant] | 40% |
| [Plaintiff] | 40% |
| TOTAL: | 80% (the [RKS]) |

This evidence supports the trial court's findings and resulting conclusion that Plaintiff is entitled to half of Defendant's interest in RKS "under the contract" as the terms of the contract include 50% ownership interest each in PPKS, which holds Defendant's 80% interest in RKS. Thus, the trial court did not abuse its discretion in adjudicating Plaintiff as a beneficial economic interest holder of RKS and ordering that Defendant act accordingly.

Thus, we cannot conclude the trial court's order granting specific performance is so manifestly unsupported by reason to warrant a finding of an abuse of discretion. *See Kassel*, 289 N.C. App. at 184, 888 S.E.2d at 693. Defendant's argument is overruled.

**B. Prior Judgment**

Defendant argues the trial court violated the rule prohibiting a superior court

judge from overruling the decision of another superior court judge and the entry of judgment was improper because necessary persons did not appear as parties. Specifically, Defendant argues the order granting summary judgment "necessarily determined" James and Defendant were the only members of RKS and each had a 50% ownership interest, thus the order granting specific performance overruled the summary judgment order when it adjudicated Plaintiff to be a 40% beneficial economic interest owner. Defendant argues the order granting specific performance "effectively removes Defendant as one of the two members of [RKS] and replaces him with Plaintiff, because the judgment enjoins Defendant from casting any vote affecting Plaintiff's 'beneficial interest' in [RKS] without Plaintiff's affirmative consent." We disagree.

While Defendant is correct that:

> The well established rule in North Carolina is that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action.

*Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972). This is not what happened in the case *sub judice*.

Prior to trial, James and Katherine filed a motion for summary judgment in which they asserted that James and Defendant were the sole owners of RKS. The trial court granted summary judgment in favor of James and Katherine, leaving

Defendant as the only remaining defendant at trial. While the *motion* for summary judgment made claims regarding the ownership of the LLCs, including that James and Defendant "are the only two owners of [RKS]," the trial court's order granting summary judgment did not find that James and Defendant each had a *50% ownership interest* in RKS. The record is clear Defendant has an 80% ownership interest and James has a 20% ownership interest in RKS.

We acknowledge the special verdict sheet completed by the jury reads "[a]s between the parties to this action, what percentage, if any, of the *ownership interest* in [RKS] is *owned* by each of the parties to this action," however, the trial court specified in its order that it was recognizing and enforcing Plaintiff's "40% ownership of the *beneficial economic interest . . .* which is one-half of the beneficial economic interest of [Defendant]" in RKS, not *ownership interest*.

The trial court's order explicitly states Plaintiff's ownership of the beneficial economic interest in RKS makes her an "economic interest owner" under N.C. Gen. Stat § 57D-1-03(11). An economic interest owner is defined as "[a] person who owns an economic interest but *is not a member*." N.C. Gen. Stat. § 57D-1-03(11) (emphasis added) (2024). Further, economic interest is defined as "[t]he proprietary interest of an interest owner in the capital, income, losses, credits, and other economic rights and interests of a limited liability company, including the right of the owner of the interest to receive distributions from the limited liability company." N.C. Gen. Stat. § 57D-1-03(10). Thus, the trial court did not transfer half of Defendant's ownership

interest in RKS to Plaintiff; the trial court is recognizing and enforcing Plaintiff's entitlement to half of the *beneficial economic interest* of Defendant's total *economic interest* in RKS.[4] Defendant's 80% ownership interest and James' 20% ownership interest in RKS remain undisturbed. The trial court's judgment following the jury verdict and order of specific performance did not overrule the prior order granting summary judgment in favor of James and Katherine.

Finally, Defendant argues the trial court's judgment is null and void because James and Katherine were necessary parties but were not parties at trial. A necessary party is "all persons *who have or claim material interests in the subject matter* of a controversy, which interests will be directly affected by an adjudication of the controversy." *DeRossett v. Duke Energy Carolinas, LLC*, 206 N.C. App. 647, 660, 698 S.E.2d 455, 464 (2010) (emphasis added) (quoting *Durham Cnty. v. Graham*, 191 N.C. App. 600, 603, 663 S.E.2d 467, 469 (2008)). Necessary parties must be joined in an action. *DeRossett*, 206 N.C. App. at 660, 698 S.E.2d at 464. Here, James and Katherine were initially parties to the lawsuit but all claims against them were dismissed upon the trial court granting their motion for summary judgment. Defendant argues "Indisputably, Defendant and James [] held fifty percent ownership interests in [RKS]" and by the trial court adjudicating Plaintiff as a

---

[4] The PPKS operating agreement splits Defendant's 80% ownership interest in RKS equally between Plaintiff and Defendant. The trial court's order is enforcing this by essentially giving Plaintiff one half of Defendant's beneficial interest in RKS, or the equivalent of 40% of the total beneficial interest in RKS. James' 20% ownership interest is undisturbed by this action.

beneficial economic interest owner it has given "Plaintiff the power of Defendant's vote, necessarily affecting James [] rights." As discussed *supra*, the record is clear that Defendant holds an 80% ownership interest in RKS and James holds 20%. Defendant's argument that he and James each hold 50% ownership is without merit. The trial court's order only affected Defendant's interests. Neither James nor Katherine had a material interest in the subject matter of the controversy that would be directly affected by an adjudication of the controversy. Thus, it was not error for the trial court to adjudicate this matter without James and Katherine being parties.

## III.    Conclusion

For the foregoing reasons, the trial court did not err by entering its judgment following the jury verdict and order granting specific performance. The trial court's judgment and order is affirmed.

AFFIRMED.

Judges CARPENTER and GORE concur.